DANIEL E. GARDENSWARTZ [SBN 169749]
dgardenswartz@swsslaw.com
OWEN M. PRASKIEVICZ [SBN 292439]
opraskievicz@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendants/Counter
Complainants ANDREW MELONE and
AMERICAN PIZZA
MANUFACTURING, aka AMERICAN
PIZZA MFG

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPHER MEDIA LLC (formerly known as Local Clicks), dba Doctor Multimedia, a Nevada Limited Liability Corporation, Ajay Thakore, an individual,<br><br>          Plaintiffs,<br><br>          v.<br><br>Andrew Melone, an individual; American Pizza Manufacturing, aka American Pizza Mfg, A California business entity; Does 1-10,<br><br>          Defendants. | Case No. 21-cv-1909-RBM-WVG<br><br>**DEFENDANTS/COUNTER CLAIMANTS' OPPOSITION TO PLAINTIFFS/COUNTER DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS TO FIRST AMENDED COUNTERCLAIM**<br><br>Date:    June 5, 2023<br>Judge:  Ruth Bermudez Montenegro<br>Ctrm:   5B<br><br>Edward J. Schwartz<br>United States Courthouse<br>221 West Broadway<br>San Diego, CA 92101 |
| Andrew Melone, an individual; American Pizza Manufacturing, aka American Pizza Mfg., a California business entity,<br><br>          Counterclaimants,<br><br>          v.<br><br>Gopher Media LLC (formerly known as Local Clicks), dba Doctor Multimedia, a Nevada Limited Liability Corporation, Ajay Thakore, an individual; Roes 1-10,<br><br>          Counter-Defendants. | Magistrate:  William V. Gallo<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

1
2

# TABLE OF CONTENTS

I.   SUMMARY OF OPPOSITION ........................................................................1

II.   RELEVANT FACTS ....................................................................................3

   A.   Relevant Allegations in the Counterclaim. ........................................3

   B.   Facts Obtained in Discovery or Occurring After the Pleadings ....................4

III.   PLAINTIFFS' JOP MOTION LACKS MERIT PROCEDURALLY AND
      SUBSTANTIVELY ...........................................................................7

   A.   Plaintiffs' JOP Motion Is Facially Defective And Untimely...........................7

   B.   The SACC Sufficiently Alleges the Elements of Trade Libel.......................8

      1.   Plaintiffs false statements were not merely "opinions" about APM's
          Products and Services ...........................................................9

      2.   Trade libel pecuniary losses can include a lost market share and costs to
          repair the damage caused by the libel......................................................11

   C.   Plaintiffs Independently Attacked Melone as the Owner and as an Employee
      of APM ..................................................................................17

   D.   Intentional Interference With Prospective Economic Advantage ...............18

   E.   Unfair Competition ........................................................................21

   F.   Declaratory Relief Allowed for Trade Libel Claims .....................................22

IV.   DEFENDANTS ALTERNATIVELY REQUEST LEAVE TO AMEND......22

   A.   If Any Part Of The JOP Is Granted, Defendants Should Be Granted Leave
      To Amend.............................................................................22

   B.   Leave Should Be Granted for Defendants to Add a Claim for Defamation.23

V.   CONCLUSION.................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Aetna Casualty & Sur. Co. v. Centennial ins. Co.*,
    838 F.2d 346 (9th Cir. 1988) ................................................................. 9

6

*Auvil v. CBS "60 Minutes"*,
    67 F.3d 816 (9th Cir. 1995) ................................................................... 9

7

8

*Avaya Inc., RP v. Telecom Labs, Inc.*,
    838 F.3d 354 (3d Cir. 2016) ................................................................ 19

9

10

*Bilinski v. Keith Haring Found., Inc.*,
    632 F. App'x 637 (2d Cir. 2015) ........................................................ 15

11

12

*Bozdogan v. 23 Ludlam Fuel, Inc.*,
    No. CV 16-1053 (JMW), 2022 U.S. Dist. LEXIS 30763 (E.D.N.Y.
    Feb. 22, 2022) ...................................................................................... 24

13

14

*Burkett v. Griffith*
    (1891) 90 Cal. 532 ............................................................................... 14

15

16

*Chandavong v. Fresno Deputy Sheriff's Ass'n*,
    599 F. Supp. 3d 1017 (E.D. Cal. 2022) .............................................. 22

17

18

*Charles Atlas, Ltd. v. Time-Life Books, Inc.*,
    570 F. Supp. 150 (S.D.N.Y. 1983) ..................................................... 15

19

20

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
    690 F.2d 1240 (9th Cir. 1982), cert. denied, 459 U.S. 1227, 75 L.
    Ed. 2d 468, 103 S. Ct. 1234 (1983) .................................................... 25

21

22

*Computerxpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (2001) ........................................................ 10, 22

23

24

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ................................................................ 8

25

26

*El Dia, Inc. v. Rossello*,
    30 F. Supp. 2d 160 (D.P.R. 1998) ...................................................... 18

27

28

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................... 23

*Erlich v. Etner*
    (1964) 224 Cal.App.2d 69 ............................................................... 13, 14

*Fannie Mae v. Boyd*,
    No. 2:14-cv-03427-ODW(RZx), 2015 U.S. Dist. LEXIS 3365 (C.D.
    Cal. Jan. 12, 2015) ............................................................................. 15

*Glass v. Gulf Oil Corp.*,
    12 Cal. App. 3d 412 (1970) ................................................................. 14

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*,
    59 Cal. 4th 277 (2014) .................................................................... 9, 14

*Hawthorne v. Siegel*,
    88 Cal. 159 (1891) .............................................................................. 18

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    No. CV 14-03954 DDP, 2014 U.S. Dist. LEXIS 156675 (C.D. Cal.
    Nov. 5, 2014) ...................................................................................... 11

*Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*,
    No. 11-cv-4144 EMC, 2012 U.S. Dist. LEXIS 91483, 2012 WL
    2572065 (N.D. Cal. July 2, 2012) ....................................................... 20

*Ideal Steel Supply Corp. v. Anza*
    652 F.3d 310 (2nd Cir. 2011) ................................................................ 8

*Intervet, Inc. v. Mileutis, Ltd.*,
    Civil Action No. 15-1371 (FLW)(TJB), 2016 U.S. Dist. LEXIS
    22165 .................................................................................................. 16

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) ............................................................. 23

*Leadsinger, Inc. v. BMG Music Publishing*,
    512 F.3d 522 (9th Cir. 2008) ............................................................... 23

*Leonardini v. Shell Oil Co.*,
    216 Cal. App. 3d 547 (1989) ......................................................... 12, 22

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ............................................................................ 23

*Mann v. Quality Old Time Serv., Inc.*,
120 Cal. App. 4th 90 (2004) ............................................................................... 13

*Millar v. Indiana Hodp.*,
562 F.Supp. 1259 (WD PA 1983) ......................................................................... 7

*Muddy Waters, LLC v. Superior Court*,
62 Cal. App. 5th 905 (2021) ............................................................................... 13

*Multimedia Patent Tr. v. Walt Disney Co.*,
No. 10-CV-146 ...................................................................................................... 7

*NPK Indus. v. Hunter*,
No. 15-cv-00811-SI, 2015 U.S. Dist. LEXIS 123824 (N.D. Cal. Sep.
16, 2015) ....................................................................................................... 12, 13

*Oracle Am., Inc. v. Cedarcrestone, Inc.*,
2013 U.S. Dist. LEXIS 89986 ............................................................................ 20

*Overhill Farms, Inc. v. Lopez*,
190 Cal. App. 4th 1248 (2010) .......................................................................... 11

*Piping Rock Partners, Inc. v. David Lerner Assocs.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013) ............................................................... 24

*Polygram Records, Inc. v. The Superior Court of Napa County*,
170 Cal. App. 3d 543 (1985) ............................................................................. 14

*Roling v. E\*Trade Sec. LLC*,
279 F.R.D. 522 (N.D. Cal. 2012) ....................................................................... 23

*Rural Fire Protection Co. v. Hepp*,
366 F.2d 355 (9th Cir. 1966) ............................................................................. 25

*Serpa v. SBC Telecomms., Inc.*,
318 F. Supp. 2d 865 (N.D.Cal. 2004) ................................................................ 24

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*,
205 Cal. App. 4th 999 (Cal. Ct. App. 2012) ...................................................... 15

*Sutter's Place v. Zurich Am. Ins. Co.,*
    No. 5:20-cv-09384-EJD, 2022 U.S. Dist. LEXIS 44837 (N.D. Cal.
    Mar. 14, 2022) ................................................................................. 6

*Telebrands Corp. v. Ragner Tech. Corp.,*
    2019 U.S. Dist. LEXIS 57247 (D.N.J. Apr. 3, 2019)........................ 19

*Thimes Sols. v. TP-Link USA Corp.,*
    2:19-cv-10374-SB-E, 2022 U.S. Dist. Lexis 202913 (C.D. Cal. Nov.
    3, 2022) ................................................................................. 10, 24

*Transcription Communs. Corp. v. John Muir Health,*
    No. C 08-4418 TEH, 2009 U.S. Dist. LEXIS 25151 (N.D. Cal. Mar.
    13, 2009) ................................................................................. 19

*Trekeight, Ltd. Liab. Co. V. Symantec Corp.,*
    No. 04-Cv-1479 ................................................................................. 8, 9

*United States CFTC v. Maggio,*
    No. C05-5766RJB, 2007 U.S. Dist. LEXIS 73518 (W.D. Wash. Oct.
    1, 2007) ................................................................................. 7, 8

*Wilson v. Superior Court of L.A. Cty.,*
    13 Cal. 3d 652 (1975) ...................................................................... 17

*Wright v. Coules*
    (1906) 4 Cal.App. 343 ...................................................................... 14

**Statutes**

Bus. and Prof. Code § 17200 ..................................................................... 21

Cal. Code Civ. Proc. § 1060 ...................................................................... 22

Civ. Code § 43 ........................................................................................... 21

Civ. Code § 1708 ....................................................................................... 22

**Other Authorities**

As Prosser on Torts.................................................................................... 16

Fed. Rule of Civ. Proc. 15 ........................................................................ 23

Rest. 2d Torts § 623a ............................................................................. 9, 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rest. 2d Torts, §§ 626 ................................................................................................ 9

Rest. 2d Torts § 629 ........................................................................................... 9, 12

Rest. 2d Torts, § 633 ....................................................................................... *passim*

Rest. 2d Torts, § 633(2)(b) and comment (h) ........................................................ 16

1    Defendants and Counterclaimants AGFM Family Enterprises, LLC dba
2    American Pizza Manufacturing, Inc. ("APM") and Andrew Melone ("Melone")
3    submit the following opposition to the motion for judgment on the pleadings ("JOP
4    Motion") by Plaintiffs and Counter-defendants Ajay Thakore ("Thakore") and
5    Gopher Media, LLC dba Doctor Multimedia ("Gopher Media").

6    **I.      <u>SUMMARY OF OPPOSITION</u>**

7    Plaintiffs Thakore and Gopher Media (collectively "Plaintiffs") seek to avoid
8    the consequences of their malicious misconduct directed toward Defendants APM
9    and Melone (collectively "Defendants") based on Plaintiffs' claim that Defendants
10   have not sufficiently pleaded a pecuniary loss. Plaintiffs originally filed this lawsuit
11   as part of a larger effort to secure favored parking spaces in front of Defendants'
12   business establishment, which had been re-permitted by the local jurisdiction to 15
13   minute parking. Blaming Defendants for the subsequent ticketing of Thakore's
14   green Lamborghini and other vehicles that were often parked for hours in the 15-
15   minute spaces, Plaintiffs initiated a harassment campaign against Defendants,
16   falsely asserting on social media and other platforms that Defendants made racist
17   comments towards Thakore, kicked Thakore's three-legged dog, sold unsanitary
18   pizza, and conspired with the San Diego police to ticket Thakore's vehicles.[1]

19   The only evidence supporting any of Plaintiffs' allegations is Thakore's
20   memory; the same memory that lacks recollection of his prior vandalism and
21   criminal threat convictions, whether he paid others to discontinue doing business
22   with APM (he did), whether he's ever actually eaten pizza from APM, and a host of
23   other misconduct which witnesses will confirm and which expert testimony will
24   establish did in fact injure APM and its principal, Andrew Melone. Thus the real
25   dispute in this lawsuit is now whether Thakore and Gopher Media will finally have
26   to face a jury for their blatant lies, harassment, and efforts to intimidate.

27
28
---
[1]     In response to Defendants' motion for summary adjudication, Plaintiffs agreed to
        dismiss their claim that the parking tickets were based on false police reports.

The Counterclaim that Plaintiffs so desperately seek to dismiss sets forth very specific misconduct, and resulting losses, but is only the tip of the iceberg compared to what discovery in this case and subsequent acts by Thakore have revealed. Plaintiffs ask this Court to dismiss the affirmative claims against them because the customers they attempted to influence have not been specifically identified. This effort fails, and the JOP Motion should be denied (or at least leave to amend granted), for at least the following reasons:

- "Pecuniary loss" in the context of trade libel includes not just the loss of customers but of any "impairment of vendibility or value to the business" as well as "the expense of measures reasonably necessary to counteract the publication, including litigation, to remove the doubt cast upon vendibility or value by disparagement";[2]

- Where, as here, it is impossible to identify lost customers, evidence of "market loss" is permissible;[3]

- Rule 12(c) requires that the JOP Motion must be brought "within such time as not to delay the trial" and the pre-trial hearing in this case is set for August 3, 2023—less two months away by the time the JOP Motion is to be likely decided by this Court;

- Broad leave to amend is uniformly allowed when the pleadings are challenged under Rule 12(c), so as to allow a claimant to supplement the allegations after discovery has resulted; and

- Plaintiffs, who have the specific information they claim that the pleadings lack, and who continue to actively conceal that information from Defendants while intimidating witnesses, may not benefit from their own wrongdoing.

---

[2] The Restatement of the Law of Torts, Second, Volume 3 ("Restatement"), § 633
[3] *Id.*, comment (h).

## II.   RELEVANT FACTS

In considering whether to grant, deny, or deny with leave to amend, the Court should consider both the facts as currently alleged in the operative Counterclaim, those facts which Defendants have since learned in discovery, and Plaintiffs' actions that occurred after the close of pleadings, of which Plaintiffs are well aware.

### A.   Relevant Allegations in the Counterclaim.[4]

This dispute began in 2020 when the City of San Diego added 15-minute limits to parking spaces outside of APM, which APM sought for the convenience of its "take n bake" pizza customers. (SACC, ¶¶1,9). Thakore blamed Defendants for the parking changes, which impeded his ability to park his cadre of supercars along a visible stretch of La Jolla Boulevard while he frequented two restaurants that neighbored APM. *Id.* After the police ticketed Thakore for his misuse of the parking spots, Plaintiffs engaged in at least the following retaliatory conduct toward Defendants:

(i) Thakore and his company Gopher Media, which specializes in "social media reputation management," paid bonuses to Gopher Media employees to leave at least 140 fake negative reviews on Google and Yelp about Defendants' goods, services, and character, including defamatory statements directed at APM's goods (such as its products smelling like "old fish" and giving "food poisoning") and services (such as Melone having "no respect for humans and animals"). [SACC at ¶¶4, 11]. Thakore then taunted Melone about the messages, saying "How do you like those reviews? Get ready. There's a 1,000 more where those came from." [SACC at ¶¶13, 14].

(ii) Thakore falsely told his thousands of Instagram followers that the owner of "Take n Bake" called him a "sandnigger", posted messages with a picture of APM saying that "if you support Take n Bake pizza you support animal abuse,

---

[4]   Defendants Second Amended Counterclaim ("SACC") was filed on June 7, 2022 and is the operative counterclaim in this case.

1  racism and frozen crust" because APM "kicks handicapped dogs" and "hates anyone

2  of color", and personally offered money to his followers to call and harass

3  Defendants, many of whom followed through, [SACC at ¶21-23.];

4          (iii) Thakore intentionally parked his vehicles outside of APM's

5  establishment with vinyl decals and messages declaring Defendants to be racist,

6  displaying gun scopes around the words "take n bake pizza", and warning that "only

7  losers get take n bake pizza" [SACC at ¶¶17-19.];

8          (iv) Thakore harassed Defendants' customers in a multitude of ways,

9  including yelling at them, throwing cash at them, calling them losers, and blowing

10  marijuana smoke at them [SACC at ¶¶16, 17, 25, 26];

11          (v) Thakore instigated multiple acts of vandalism against APM's storefront,

12  especially during milestone events in this lawsuit, such as the day after the original

13  Counterclaim was filed [SACC at ¶29.]; and

14          (vi) Thakore has a financial interest in Carino's Pizza (a competitor) and

15  Plaintiffs flew airplanes above La Jolla declaring that "Carinos Pizza is Better Than

16  Take-n-Bake" and "Just Say No to Take-n-Bake Pizza." [SACC at ¶¶10, 20.]

17          The SACC further alleges specific pecuniary harm in the body of its

18  pleadings, including preventing customer access and enjoyment of APM facilities

19  (¶¶25-26), and vandalism (See ¶29: slashed signs, broken windows, graffiti).  In

20  addition to these very specific allegations of special harm, the SACC alleges that

21  Plaintiffs "knew or should have recognized that someone else might act in reliance

22  on the statements, causing Counterclaimants financial loss" (¶35) and that

23  Defendants "suffered direct financial harm because someone else acted in reliance

24  on the statements." (¶36).

25          **B.    Facts Obtained in Discovery or Occurring After the Pleadings**

26          Plaintiffs argue that they "are left to guess what they say, when they were

27  posted and who posted them" (JOP Motion at p.14). To the contrary, not only were

28  Plaintiffs provided screenshots of certain specific statements at issue in the very

body of the SACC, they were given even more specifics in discovery. If necessary, those additional facts—about which Plaintiffs are already keenly aware—can be added to an amended counterclaim, as reflected in Exhibit 1 to the Declaration of Owen M. Praskievicz ("Praskievicz Decl."), labeled Proposed Third Amended Counterclaim ("PTACC"). This amendment would expressly and specifically plead the additional facts that Plaintiffs are already well aware of, including the 140 false negative reviews, expert reports on damages, and the following additional "specifics" that were disclosed or obtained by Defendants in discovery:

1. Financial loss and pecuniary reputational damages of $955,239, including:
   - $140,214 in net lost profits;
   - $48,825 for costs to repair vandalism at APM and Melone's time;
   - $16,200 in increased insurance premiums;
   - $615,000 to repair the damage to APM's products, goods, and services;
   - More than $215,662 in attorney's fees and costs (PTACC, ¶¶ 30, 48-49, 62-63, 84, and Exhibits B, C, and D; Praskievicz Decl. ¶ 4.)

2. Thakore has a 25% ownership interest in an APM competitor, Carino's. (PTACC, ¶ 31).

3. Plaintiffs engaged in multiple, weeklong promotions with Carino's designed to disrupt and disparage APM's Take-n-Bake pizza business, including an offer to Carino's customers who were told they would get free food with the passwords "Take-n-Bake sucks" or "Fuck take-n-Bake." (PTACC, ¶ 32).

4. During one of Plaintiffs' Carino promotions on October 9, 2022, Thakore, together with Gopher Media employee Ryan Mann, offered customers standing in line at APM $1,000 to leave and go to Carino's, with at least two of the men accepting the payment. When others refused, Thakore threw a glass into the street and called them "poor." (PTACC, ¶ 33).

5. When Carino's ran out of food, Thakore posted on an Instagram story that his credit card is open at Pizza on Pearl (another nearby pizza competitor), and that drinks are free at Verdes Ranchero (neighboring Mexican restaurant) as long as people promised never to go to "Take-n-Bake" because "That Guy Fucking Sucks." (PTACC, ¶ 34).

6. In his deposition, Thakore repeatedly failed to deny paying prospective APM customers to not eat at APM, saying only that he could "not recall" doing such a thing. (PTACC, ¶ 35).

7. During the October 9, 2022, incident, Thakore's statements and conduct incentivized vandalism of APM by minors and others, including through inappropriate acts of intoxicated, drug induced behavior. (PTACC, ¶ 36).

8. A woman informed Melone that her minor son and his group of minor friends were approached by Thakore, who offered them money to "fuck up

APM." The mother informed Melone that her son's friends accepted the payment and vandalized APM. (PTACC, ¶ 37).

9. In addition to the vandalism alleged in the SACC, APM has been vandalized on several more occasions, including July 15, 2022, and September 24, 2022, which occurred immediately after events in this lawsuit, leaving the business covered in graffiti, broken glass, and higher insurance. (PTACC, ¶ 38).

10. Three former Gopher Media employees confirmed that Plaintiffs provided bonuses to employees who wrote fake reviews about APM and others. (PTACC, ¶ 39).

11. The identity of numerous customers, employees of APM, and community members who Plaintiffs have also harassed, including Austin Green, Ava Dallal, Rachelle Estrella, Mateen Golchin, Kyle Webster, Gabriel Wilson, Ian Dohm, Catherine Cox, Micah Whorton, Daniel Goodrich, Alex Yerbury, Jeff Chang, Angela Chang, Jason Brown, Michael Barry, Ray Higgins, Dave Odmark, Lori Southerland, Avery [Last Name Unknown] and friends of Avery who were paid by Thakore to not order food from APM. (PTACC, ¶ 40).

12. Plaintiffs have attempted to intimidate witnesses favorable to Defendants and other business owners. (PTACC, ¶ 40).

With respect to this last allegation, in 2023 alone, Thakore has filed at least three lawsuits against four individuals that were identified by Defendants as witnesses in this case, as well as another lawsuit in which Plaintiffs allege a competitor, GoGroth LLC, engaged in trade libel for merely *referencing* the allegations in Defendants' counterclaim. The court can take judicial notice[5] of the following lawsuits as set forth in the accompanying Request for Judicial Notice:

| Case Number | Party Name | Opposing Party | Location | Date Filed |
|---|---|---|---|---|
| 37-2023-00004515-CU-NP-CTL | THAKORE, AJAY | SUTHERLAND, LORI | Cal. Sup., San Diego | 02/01/2023 |
| 37-2023-00003545-CU-NP-CTL | THAKORE, AJAY | YERBURY, ALEX | Cal. Sup., San Diego | 01/26/2023 |
| 37-2023-00000281-CU-NP-CTL | THAKORE, AJAY | BOND, JARED SHAH, TARUN | Cal. Sup., San Diego | 01/04/2023 |
| 23-CV-0226-BAS-MDD | GOPHER MEDIA | GOGROTH, LLC | USDC SDCA | 02/06/2023 |

Lori Sutherland works at APM and is Melone's girlfriend. Alex Yerbury is an APM customer. Jared Bond and Tarun Shah are former Gopher Media employees

---

[5] *Sutter's Place v. Zurich Am. Ins. Co.*, No. 5:20-cv-09384-EJD, 2022 U.S. Dist. LEXIS 44837, at *8 (N.D. Cal. Mar. 14, 2022) (judicial notice on a 12(c) motion).

who have both asserted they were paid by Thakore to write fake reviews about APM and other businesses. Collectively, these lawsuits show that Plaintiffs will stop at nothing to retaliate and silence anyone who speaks out against them, and are part and parcel to Plaintiffs' attacks on Defendants.

### III.   PLAINTIFFS' JOP MOTION LACKS MERIT PROCEDURALLY AND SUBSTANTIVELY

#### A.   Plaintiffs' JOP Motion Is Facially Defective And Untimely.

As a threshold matter, the Court would be well within its discretion to deny Plaintiffs' motion for the simple reason that, as stated in its caption and body, it challenges a "First Amended Counterclaim" that has since been mooted by Defendants' Second Amended Counterclaim, negating Plaintiff's belated motion. "When a party files an amended pleading, the amended pleading supercedes the original, 'the latter being treated thereafter as non-existent.'" *Multimedia Patent Tr. v. Walt Disney Co.*, No. 10-CV-146 H (CAB), 2011 U.S. Dist. LEXIS 159456, at *27 (S.D. Cal. Feb. 24, 2011)(quoting Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010).

But Plaintiffs' motion is procedurally stale for another reason.  As Plaintiffs concede, a motion under Federal Rule of Civil Procedure 12(c) is proper only "[a]fter the pleadings are closed *but within such time as not to delay the trial*." JOP Motion, 3:18-19 (quoting Fed.R.Civ.P. 12(c))(emphasis added). This common sense requirement exists because one of the primary goals of a motion for judgment on the pleadings is that it "may save the parties needless and often considerable time and expense which otherwise would be incurred during *discovery* and trial." *Millar v. Indiana Hodp.*, 562 F.Supp. 1259, 1268 (WD PA 1983) (emphasis added.)

Courts will thus dismiss 12(c) motions where the plaintiff has delayed in bringing the motion and where granting leave to amend would require a reopening of discovery and otherwise delay trial. For example, in the closely analogous case of *United States CFTC v. Maggio*, No. C05-5766RJB, 2007 U.S. Dist. LEXIS 73518,

at *17 (W.D. Wash. Oct. 1, 2007), the court dismissed a motion for judgment on the pleadings—specifically based on an alleged failure to plead with more particularity—because it was filed "almost two years after the complaint was filed, more than a year after the answer was filed, two months after discovery was completed, and two months before trial."

Relying on Ninth Circuit precedent to support its decision, the *Maggio* court explained that if it granted the motion "the case would only be postponed" because "[w]hen a complaint is dismissed under rule 9(b), a court should grant leave to amend" and "[a]llowing the Plaintiff time to amend the complaint, as well as the possibility of additional discovery due to the amendments, would more than likely delay trial in this matter." *Id*. (citing *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1107 (9th Cir. 2003); *see also Ideal Steel Supply Corp. v. Anza* 652 F.3d 310, 325 (2nd Cir. 2011) (Rule 12(c) motion denied after close of discovery, evidence produced in discovery would fill perceived gaps in complaint); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241-43 (4th Cir. 1999)(possible abuse of discretion to grant dismissal without affording opportunity to amend to conform complaint to post-filing developments and evidence obtained during discovery).

Here, Plaintiffs filed their Rule 12(c) motion more than sixteen months after the Defendants filed their original counterclaim (with substantially identical allegations as the operative SACC), nearly five months after discovery closed, and now less than two months before pretrial filings are due. Plaintiffs do not and cannot proffer a legitimate excuse for such a delay, other than for the "gotcha" that Rule 12(c) is expressly designed to prevent. As discussed further below, either the court should deny Plaintiffs' motion on that and the other bases set forth herein, or grant leave to amend *without* further discovery or trial delay.

### B.   The SACC Sufficiently Alleges the Elements of Trade Libel

"California adheres to the restatement second of torts' formulation for trade libel claims." *Trekeight, Ltd. Liab. Co. V. Symantec Corp*., No. 04-Cv-1479 H

(BLM), 2006 U.S. Dist. Lexis 100609, At *31-32 (S.D. Cal. May 23, 2006) (citing *Leonardini v. Shell Oil Co*., 216 Cal. App. 3d 547 (1989)). The Restatement describes trade libel as the intentional disparagement of the quality of property that results in pecuniary damage. Rest.2d Torts, §§ 626 (1977); *Aetna Casualty & Sur. Co. v. Centennial ins. Co*., 838 F.2d 346, 351 (9th Cir. 1988). The basic elements of a trade libel cause of action are: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages. *Aetna*, 838 F.2d at 351.

"Trade libel . . . Are injurious falsehoods that interfere with business. Unlike classic defamation, they are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business." *Id*. (citing *Guess, Inc. v. Sup. Ct*., 176 Cal.App.3d 473, 479 (1986)). "Disparagement concerns damage to the reputation of products, goods, or services." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc*., 59 Cal. 4th 277, 289 (2014). Therefore, to succeed on a claim for trade libel, "a plaintiff must [prove] that the defendant published a knowingly false statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests." *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 820 (9th Cir. 1995) (quoting Rest.2d Torts § 623a).

### 1. Plaintiffs false statements were not merely "opinions" about APM's Products and Services

Ignoring the detailed comments and conduct alleged in the SACC, Plaintiffs claim that all of their published statements maliciously directed at Defendants were merely matters of opinion and thus not actionable, such as "take-n-bake sucks." But under the governing law "[a] statement is disparaging if it is understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existence or extent of his property in them, and [¶] (a) the publisher intends the statement to cast the doubt, or [¶] (b) the recipient's understanding of it as casting the doubt was reasonable." *Hartford*, *supra*, 59 Cal. 4th at 288 (citing Restatement, § 629). Thakore's threating statements to Melone that "this is only the beginning"

1  and "[h]ow do you like those reviews? Get ready. There is a 1,000 more where those
2  came from" [SACC ¶13, 14] make Thakore's malicious intent clear.

3      "To determine whether a statement is one of fact or one of opinion, courts
4  look to the total circumstances in which the statement was made, including the
5  statement's general context (such as the tenor, subject matter, setting, and format),
6  specific context (such as any figurative or hyperbolic language and reasonable
7  audience expectations), and whether the statement itself is 'sufficiently factual to be
8  susceptible of being proved true or false.'" *Thimes Sols., Inc. v. TP Link USA Corp*.,
9  no. 2:19-cv-10374-SB-E, 2022 U.S. Dist. Lexis 202913, at *7 (C.D. Cal. Nov. 3,
10  2022) (citing *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995)).
11  "A court must put itself in the place of an average reader and determine the natural
12  and probable effect of the statement, considering both the language and the context."
13  *Computerxpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1011 (2001).

14      Looking at the totality of Plaintiffs' disparaging comments and conduct
15  toward both APM and Melone across various mediums—on social media, on
16  business review sites like Google and Yelp, on vehicles parked outside APM, on
17  stickers placed throughout La Jolla, and on airplane banners—there should be no
18  question that, from a *pleading* perspective, Plaintiffs exhibited an intent to harm
19  Plaintiffs with their comments. No other reasonable inference can be drawn.

20      Moreover, statements such as Defendants selling "burnt pizza" are not
21  statements of fact, not opinion, and false on their face *since Defendants do not sell*
22  *cooked pizza*. Likewise, the Google review by "Aj T." that stated APM sold the
23  "worst pizza ever" because he got "food poisoning," while simultaneously stating
24  that "the owner Andrew is a real rude person" are demonstrably false statements of
25  fact, especially in the context of Thakore's campaign of other false statements that
26  were made up out of whole clot. Indeed, in his deposition Thakore could not recall
27  when he ever actually ate APM's pizza. There is equally no factual basis to support
28  a statement that APM smells like "old fish" or that APM is unsanitary.

1    Adding further insult to injury, Plaintiffs published multiple statements that
2    APM and Melone abused animals and were racist by calling Thakore a "sand
3    ni\*\*er." While courts recognize that "general statements charging a person with
4    being racist, unfair, or unjust are not actionable -- such as contained in the signs
5    carried by protestors -- where such accusations are joined by more specific acts of
6    racism, such statements can be provably false assertions of fact. *Overhill Farms,*
7    *Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010) (statements were defamatory as
8    they accused a business of engaging in racist firings, declaiming the disparate
9    impact the firings had on "immigrant women," and printing leaflets explicitly
10   asserting that the company used a "pretext" to eliminate certain workers while
11   referring to the business's conduct as "racist and discriminatory abuse against Latina
12   women immigrants.") "The assertion of racism, when viewed in that specific factual
13   context, is not merely a hyperbolic characterization of Overhill's black corporate
14   heart—it represents an accusation of concrete, wrongful conduct." *Id.*

15   **2.    Trade libel pecuniary losses can include a lost market share and costs to repair the damage caused by the libel**

16

17   Plaintiffs myopically focus on those cases where, prior to any discovery,
18   courts dismissed a trade libel claim for a lack of specificity (uniformly with leave to
19   amend) because the specific publishers of the libel and/or specific customers whose
20   sales were lost were not identified. In none of those cases was the difficulty of
21   identifying lost customers even at issue. In *Homeland Housewares*, at issue was a
22   motion to dismiss at the beginning of the case, and the court granted a motion to
23   dismiss a trade libel claim—with leave to amend—because the allegations that the
24   plaintiffs had suffered lost sales, a disruption of business relationships, and a loss of
25   market share and goodwill, was not sufficiently specific at the pleading stage.
26   *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP
27   (MANx), 2014 U.S. Dist. LEXIS 156675, at \*10 (C.D. Cal. Nov. 5, 2014). There
28   was no discussion about the difficulty in ascertaining lost customers whatsoever.

Similarly, in *NPK Indus.*, the court granted an early-stage motion to dismiss—with leave to amend—because the plaintiff's Second Amended Complaint "does specify who made the allegedly disparaging remarks, to whom, and when." *NPK Indus. v. Hunter*, No. 15-cv-00811-SI, 2015 U.S. Dist. LEXIS 123824, at *12-13 (N.D. Cal. Sep. 16, 2015). Once again, whether such individuals could be identified was not at issue.

Plaintiffs correctly cite to and rely on, but proceed to ignore, the Restatement of Tort's "formulation of trade libel" and there is no dispute California has adopted that formulation. JOP Motion, 5:26-27; *Leonardini*, *supra* 216 Cal. App. 3d 547 (citing *Erlich v. Etner* (1964) 224 Cal.App.2d 69, 73.) Section[6] 626 ("Disparagement of Quality-Trade Libel") together with Sections 623A, 629 and 633 specifically identify the pleading and proof requirements for Trade Libel—and exceptions to those requirements. Particularly relevant to the present JOP Motion is Section 633, which defines "pecuniary loss" as follows:

(1)   The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to:

(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, **including impairment of vendibility or value caused by disparagement**, and

(b) **the expense of measures reasonably necessary to counteract the publication**, including litigation to remove the doubt cast upon vendibility or value by disparagement;

(2)    This pecuniary loss may be established by:

(a) proof of the conduct of specific persons, or

(b) **proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify**. *Id* (emphasis added).

Comment (h) to Section 633 expands on (2)(b):

Widely disseminated injurious falsehood may […] cause serious and genuine pecuniary loss by affecting the conduct of a number of persons whom the plaintiff is unable to identify and so depriving him of a market that he would otherwise have found.

---

[6] "Section" references are henceforth to the Restatement unless otherwise stated.

When this can be shown with reasonable certainty, *the rule requiring the identification of specific purchasers is relaxed and recovery is permitted for the loss of the market*. As in analogous cases involving the loss of profits of an established business, as the result of other torts or of breach of contract, this may be proved by circumstantial evidence showing that the loss has in fact occurred, and eliminating other causes." (emphasis added)

Here, it cannot be reasonably disputed that the SACC specifically alleges "widely disseminated" falsehoods which were likely to cause serious and genuine loss by affecting the conduct of a large number of people who are difficult if not impossible to specifically identify.  Moreover, as explained in detail above, Defendants have also identified in both the SACC and throughout the discovery process the specific names of those who published the libel and the identities of several individuals who were on the receiving end of the libel.  Expert testimony has also been provided which based on the direct and circumstantial evidence explains in specific detail Defendants' damages. This includes: $140,214 in net lost profits due to Plaintiffs' false statements; $615,000 to repair Defendants' reputation and counteract Plaintiffs' false statements online; and $48,825 to repair the physical damage to APM's storefront and for Melone's time. As noted below, the litigation fees and costs necessary to stop Plaintiffs' continued falsehoods are also recoverable in a trade libel case.

Most all of the cases that require the identity of specific purchases (at the initial, pleading stage), rely on *Erlich v. Etner* 224 Cal.App.2d 69, 73 (1964) ("*Erlich*") and *Mann v. Quality Old Time Serv., Inc.,* 120 Cal. App. 4th 90, 109 (2004) ("*Mann*"), which itself relies on *Erlich. See, e.g., NPK Indus.,* at *12 (citing *Mann*); *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 925 (2021) (citing to *Erlich* and *Mann* for the proposition that "in the usual case the plaintiff must identify the particular purchasers who have refrained from dealing with him").

The *Erlich* court ultimately reversed a verdict in favor of the plaintiff on the trade libel claim because there was not only a lack of specificity with respect to customers, but also a lack of "any proof as to the profit made at any of these times,

1 nor whether his net profits had been greater or less after than before the
2 publications." Because there was no showing of damage "either in any specific sum
3 or at all" the verdict was overturned. *Id*. at 74-75. *Erlich* and the cases relying upon
4 it do not, therefore, stand for the proposition that there can never be a viable trade
5 libel claim in the absence of particular allegations and proof of specific customers
6 who did not do business with a plaintiff due to the libelous statements.

7      To the contrary, *Erlich* expressly relied on the Restatement in defining trade
8 libel and on *Wright v. Coules* (1906) 4 Cal.App. 343, 347 which holds that "a
9 *general allegation* . . . of people being dissuaded by reason of a publication from
10 making any contract with or coming to the hotel, or giving it their patronage, *is*
11 *sufficient*." (emphasis added). There is therefore nothing in the cases cited by
12 plaintiff and the authorities relied upon by those cases that suggests that the relaxed
13 pleading and proof standards under a "loss of market" theory, as specifically
14 allowed under Section 633, is unavailable to California litigants. Plaintiffs fail to
15 identify any California case that has considered the relaxed pleading exception in
16 Section 633, let alone one that has expressly rejected it. Other courts have
17 recognized that trade libel "has not been subjected to rigorous judicial analysis in
18 California." *Polygram Records, Inc. v. The Superior Court of Napa County*, 170
19 Cal. App. 3d 543, 548 (1985).

20      On the other hand, in the closely related tort of slander of title,[7] California
21 courts have expressly adopted the market loss exception. In *Glass v. Gulf Oil Corp*.,
22 12 Cal. App. 3d 412, 424 (1970), the court relied upon Section 633's "loss of
23 market" comment regarding the relaxed pleading standard when holding that "that
24 the property owner may recover for the impairment of the vendibility 'of his

25
26 [7] *See Hartford* , *supra*, 59 Cal. 4th at 289 ("Disparagement emerged from the
common law tort doctrine of slander of title, . . . ."); *Erlich,* 224 Cal.App.2d at 74
27 (relying on *Burkett v. Griffith* (1891) 90 Cal. 532, which the *Erlich* court
described as "an action for 'slander of title,' which is a form of action somewhat
28 related to trade libel.")

1   property' without showing that the loss was caused by prevention of a particular

2   sale.") And in *Fannie Mae v. Boyd*, No. 2:14-cv-03427-ODW(RZx), 2015 U.S. Dist.

3   LEXIS 3365, at *22 (C.D. Cal. Jan. 12, 2015) the court held that Section 633 allows

4   for the recovery of "the expense of measures reasonably necessary to counteract the

5   publication, including litigation to remove the doubt cast upon vendibility or value

6   by disparagement" and holding that "it is well-established that attorney fees and

7   litigation costs are recoverable as pecuniary damages in slander of title causes of

8   action […]").  *See also Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings,*

9   *LLC*, 205 Cal. App. 4th 999 (Cal. Ct. App. 2012) ("attorney fees and costs necessary

10  to clear title or remove the doubt cast on it by defendant's falsehood are, *by*

11  *themselves, sufficient pecuniary damages* for purposes of a cause of action for

12  slander of title")(emphasis added).

13          While there appear to be no other cases within the Ninth Circuit dealing

14  specifically with these types of pecuniary loss under Section's 633 definition in the

15  trade libel context, cases in other circuits have recognized that Section's application

16  to a trade libel claim. In *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637,

17  642 (2d Cir. 2015), the Second Circuit ultimately held that the plaintiff could not use

18  the "market loss" theory because in that case the lost customers at issue were

19  identifiable, and it was the plaintiff who elected to withhold their identities out of

20  confidentiality concerns. But that court recognized with approval the market loss

21  approach where, as here, the lost customers are all but impossible to ascertain, and

22  cited with approval *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150,

23  155-57 (S.D.N.Y. 1983).

24          In *Charles Atlas*, the court specifically approved of the plaintiff's loss of

25  market theory in reliance upon Section 633, and allowed the plaintiff to recover net

26  lost profits and costs to pay for a reputation repair program: "[t]he plaintiff need not

27  […] identify specific lost customers to recover for lost sales; it can attempt to prove

28  lost sales by other means." *Id*. To hold otherwise "would be grossly unfair in this

case. The plaintiff sells only through mail orders. It is, therefore, virtually impossible to identify those who did not order the plaintiff's product because of the [libelous] article . . . . In all likelihood, such people would simply have failed to order, thus leaving no record of their identity." *Id. See also Intervet, Inc. v. Mileutis, Ltd.,* Civil Action No. 15-1371 (FLW)(TJB), 2016 U.S. Dist. LEXIS 22165, at *19, ft. 4 (D.N.J. Feb. 24, 2016) ("Although Plaintiff stresses that Defendant has not identified any customers it lost, this allegation is not necessary to plead this element of its trade libel claim, provided Defendant can plead the other facts sufficient to show a general diminution of business.").

So too here, where it is next to impossible to ascertain who may have seen Plaintiffs' fake reviews and other disparaging publications and simply decided to purchase their pizza elsewhere. As Prosser on Torts further explains:

> [T]he whole modern tendency is away from any such arbitrary rule. . . . It is probably still the law everywhere that he must either offer the names of those who have failed to purchase or explain why it is impossible for him to do so; but where he cannot, the matter is dealt with by analogy to the proof of lost profits . . . . If the possibility that other factors have caused the loss of the general business is satisfactorily excluded by sufficient evidence, this seems entirely justified by the necessities of the situation.

(W. Prosser, supra, § 128, at 923-24 (footnotes omitted).

This case is the poster child for the reasons why Section 633(2)(b) and comment (h) exist. Plaintiffs—experts at digital media—have spread their false statements to anyone searching online for pizza in La Jolla, Thakore's thousands of Instagram followers, foot traffic in and around APM, and whomever may have been walking along the beach when the airplane banner flew by. Plaintiffs' false statements in each of these markets would likely deter at least some portion of potential customers who it would be impossible to identify in any meaningful way. As Defendants' experts explain, online customers especially rely on ratings, yet it is impossible to know which customers were influenced by the negative ratings caused by Plaintiffs. Moreover, Thakore incentivized some prospective customers to call

Defendants and promised that "I'll never come eat at your restaurant, ever." Yet Thakore has withheld the names of these individuals who, based on the allegations and evidence, would have received payment from Thakore for this promotion. Combined with Plaintiffs' well-earned reputation for attacking anyone who speaks out against Thakore—including four witnesses in this very case—it is even less likely that witnesses would come forward or admit that they would have purchased Defendants' goods but for Plaintiffs' false statements.

Finally, it is also important to note that the Defendants' libelous conduct has continued throughout the pendency of this action, and the SACC thus also specifically seeks "injunctive relief enjoining Counter-Defendants from harassing and unlawfully disparaging Counterclaimants." Such relief is appropriate where the trade libel is perpetrated by private actors such as Plaintiffs. *Wilson v. Superior Court of L.A. Cty.*, 13 Cal. 3d 652, 662 (1975) (injunction restraining speech "may issue to protect private rights [citation] or to prevent deceptive commercial practices."). Thus, the attorney fees and costs to stop those deceptive practices are expressly recoverable as pecuniary loss under the authorities set forth above.

### C. <u>Plaintiffs Independently Attacked Melone as the Owner and as an Employee of APM</u>

Plaintiffs also argue that the SACC fails to sufficiently allege claims in support of Defendant Melone. But Plaintiffs' attacks as alleged in the SACC were coextensive of both APM and Melone, and included specific attacks on Melone where they not only identified him by name (including in fake reviews that were produced in discovery but were not expressly set forth in the SACC), but also specifically disparaged Melone by suggesting he is racist, "hates people of color," called Thakore a "sand ni**er", that he kicks dogs, and that he operates a pizza business that causes food poisoning.

/ / /

/ / /

1    Independent of APM, Plaintiffs' disparaging attacks will stick with Melone in

2  whatever future endeavor he may pursue. Likewise, in the close-knit community of

3  La Jolla, where residents associate APM with Melone, the reputational damages of

4  his services have been diminished. Where an established business is wrongfully

5  injured, the owner of the business can recover the damages sustained thereby, and

6  that upon this question evidence of the profits which he was actually making is

7  admissible. *Hawthorne v. Siegel*, 88 Cal. 159, 162 (1891). "While shareholders

8  generally do not have standing to bring suits on behalf of corporations, if the

9  shareholder has a direct, personal interest in the lawsuit, the bar to standing is

10  lowered and the plaintiff may bring the suit." *El Dia, Inc. v. Rossello*, 30 F. Supp. 2d

11  160, 168 (D.P.R. 1998) (citing Rotunda and Novak, Treatise on Constitutional Law,

12  2d ed., § 2.13, 228-29 (1992) and *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593,

13  595 (9th Cir. 1993)).) Given Melone's direct harm suffered at the hands of Plaintiffs

14  as well as his direct, personal interest in APM, as explained below, Melone has

15  standing to assert his own claims as set forth in the SACC.

16    **D.    Intentional Interference With Prospective Economic Advantage**

17    Plaintiffs seek to dismiss Defendants' intentional interference claim on the

18  grounds that the pleadings do not allege an existing economic relationship between

19  Defendants and some specific third party, with the probability of future economic

20  benefit to the Defendants. In fact, the SACC alleges that Thakore, on multiple

21  occasions, interfered and harassed Defendants' *existing* customers by yelling at

22  customers who were physically at APM, while honking his horn, throwing cash at

23  them, blowing marijuana smoke in their direction, and informing them that "only

24  losers get take n bake." Likewise, the vandalism Thakore inspired or funded at APM

25  appears to have deterred Defendants' customers from frequenting the business as

26  much, given the unsightliness of the graffiti, ripped signs, and smashed windows.

27  Like Section 633, where it is impossible to specify which customers were affected

28  by this behavior, that level of specificity is not required for an interference claim to

survive.  "California state law requires 'proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference.'" *Transcription Communs. Corp. v. John Muir Health*, No. C 08-4418 TEH, 2009 U.S. Dist. LEXIS 25151, at *28-29 (N.D. Cal. Mar. 13, 2009)(quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987) (emphasis in the original); *see also Avaya Inc., RP v. Telecom Labs, Inc*., 838 F.3d 354, 382 (3d Cir. 2016) ("[C]ases also found a reasonable expectation of economic gain in as slight an interest as prospective public sales."); *Telebrands Corp. v. Ragner Tech. Corp.,* 2019 U.S. Dist. LEXIS 57247, at *18 (D.N.J. Apr. 3, 2019) (rejecting argument based on "Defendants' failure to identify a specific, interfered-with transaction" in light of *Avaya Inc*.).

Here, Defendants do not merely allege that some customers were interfered with. They now have specific, expert testimony that establishes the probable losses that Defendants have suffered based on the Plaintiffs' alleged interference:

> Gathering plenty of positive reviews shows people how great your food is and persuades them to try your restaurant. Positive reviews help build your customers' trust. Another study by TripAdvisor showed "that 94% of diners in the US are directly influenced by online reviews when deciding on a restaurant." A 2017 story in Small Business Trends said that 31% of diners would pay more at an establishment with positive reviews. At the same time, 22% of customers wouldn't purchase something from a business with at least one negative review, and four or more bad comments can take up to 70 percent of a business's potential customers away. [Expert Report of E. Rose,, p. 45, attached as Exhibit D to the PTACC.]

Defendants have identified, through their expert reports, the lost sales that have materialized through the course of Plaintiffs' campaign. Thakore also incentivized a multitude of unknown individuals who, at the behest of Thakore, expressly told Defendants that "I'll never come eat at your restaurant, ever," indicating that Thakore convinced prospective and potentially current customers to boycott APM.

/ / /

/ / /

1    To the extent the Court decides that Defendants should add evidence adduced

2   in discovery to their pleading—evidence of which Plaintiffs are well aware—an

3   amended counterclaim would also include Thakore's offers to pay customers who

4   were standing in line at APM $1,000 to not get food from Defendants. These actions

5   occurred after the close of the pleadings in this case, and such wrongful interactions

6   with customers who Thakore paid to not eat at Defendants' business are the very

7   definition of intentional interference. Yet in discovery, Plaintiffs refused to produce

8   any information about these individuals and Thakore only offered a tepid "I don't

9   recall" when asked if he ever engaged in such conduct.

10    Where a defendant has personal knowledge of customers who it is alleged to

11   have intentionally interfered, the pleading party need not specify the names of the

12   actual customers where it broadly alleges the group at issue. In *Oracle Am., Inc. v.*

13   *Cedarcrestone, Inc*., 2013 U.S. Dist. LEXIS 89986, *11-13, the court rejected the

14   defendant's argument that Oracle merely alleged interference "with the broader

15   market for Oracle's products and services," and that "such hazy market-based

16   allegations, unconnected to any particular business relationship, do not state a viable

17   interference claim" where the complaint alleged that the defendant targeted and took

18   certain, unidentified existing customers. "These allegations, construed in the light

19   most favorable to Oracle [citation] adequately plead the requisite economic

20   relationship between Oracle and some third party with the probability of future

21   economic benefit … By definition, this is a limited group of customers *whose*

22   *identities should be in CedarCrestone's possession*, . . . CedarCrestone's assertion

23   that it has no way of defending against Oracle's intentional interference claim

24   because Oracle has not pled the elements of the claim specifically as to each

25   customer has no merit." *Id*. (emphasis added). *See also Humboldt Wholesale, Inc. v.*

26   *Humboldt Nation Distribution, LLC*, No. 11-cv-4144 EMC, 2012 U.S. Dist. LEXIS

27   91483, 2012 WL 2572065, at *6 (N.D. Cal. July 2, 2012) (allegations that

28   manufacturer and seller of hydroponic goods had existing and prospective business

1 relationships with third-party distributors and retailers, that competitor knew or

2 should have known of those relationships, and that competitor disrupted those

3 relationships by registering domain names and diverting Internet traffic from

4 plaintiff to competitor through those names, stated a claim for intentional

5 interference).

6      Because Defendants have adequately alleged their intentional interference

7 claim, the SACC undoubtedly meets the lesser burden for negligent interference.

8      **E.**    **Unfair Competition**

9      Plaintiffs move to dismiss Defendants' Unfair Competition Law ("UCL")

10 claim under Business and Professions Code section 17200 on two primary grounds.

11 First, Plaintiffs argue that the UCL "was enacted to protect both consumers and

12 competitors by promoting fair competition in commercial markets for goods and

13 services" and that neither APM or Melone are consumers or competitors of

14 Plaintiffs. To this claim, Defendants point to Plaintiffs' closely aligned relationship

15 and Thakore's ownership interest with Carino's, a neighboring business to APM that

16 also sells pizza. Accepting the pleadings as true, which this Court must, there is no

17 question that Plaintiffs operated as competitors of Defendants in promoting Carino's

18 by disparaging Defendants.

19      Second, Plaintiffs argue that an alleged unfair business practices claim under

20 Section 17200 must be tethered to an underlying constitutional, statutory or

21 regulatory provision, citing *Graham v. Bank of America N.A.* (2014) 226

22 Cal.App.4th 594, 613. Noting that Section 17200 defines "unfair competition" as

23 any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

24 untrue or misleading advertising, the SACC's allegations support a multitude of

25 grounds to support their UCL claim. Without diverting into the extensive caselaw

26 regarding the ambiguities and misconceptions regarding the pleading standards for a

27 Section 17200 claim, at least two statutes under the California Civil Code support

28 the allegations set forth in the SACC, including: Civ. Code section 43 ("every

1   person has, subject to the qualifications and restrictions provided by law, the right of

2   protection from bodily restraint or harm, from personal insult, from defamation, and

3   from injury to his personal relations") and Civ. Code section 1708 ("Every person is

4   bound, without contract, to abstain from injuring the person or property of another,

5   or infringing upon any of his or her rights.") Should the Court find that the current

6   allegations need to specifically identify these statutes, Defendants request leave to

7   amend to add these citations.

8        **F.    Declaratory Relief Allowed for Trade Libel Claims**

9        Pursuant to Cal. Code Civ. Proc. section 1060, Counterclaimants seek a

10   declaration that Plaintiffs must cease all harassing and unlawfully disparaging

11   conduct toward Defendants. Plaintiffs argue that "the alleged controversy between

12   the parties as alleged in the FACC is neither 'ripe' nor the proper subject for

13   declaratory relief" and that "Plaintiffs' breaches and/or tortious acts have already

14   occurred and have asserted them as separate causes of action in the FACC."[8] To be

15   clear, Plaintiffs' conduct toward Defendants is ongoing and on multiple occasions

16   during the course of this lawsuit Plaintiffs have continued to tortiously interfere with

17   Defendants' business. As such, and given Thakore's habit of attacking anyone who

18   opposes him, Defendants request declaratory relief from the Court. To the extent the

19   declaratory relief is also considered injunctive relief, this remedy is also available as

20   a remedy for trade libel. *Leonardini v. Shell Oil Co.*, supra, 216 cal. App. 3d 547,

21   579; *Computerxpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1015 (2001).

22   **IV.    DEFENDANTS ALTERNATIVELY REQUEST LEAVE TO AMEND**

23        **A.    If Any Part Of The JOP Is Granted, Defendants Should Be**

24              **Granted Leave To Amend**

25        Courts have wide discretion when granting a motion under Rule 12(c) to

26   couple it with leave to amend. *Chandavong v. Fresno Deputy Sheriff's Ass'n*, 599 F.

27

28   _____
     [8] As noted above, the "FACC" has been superseded.

Supp. 3d 1017, 1020 (E.D. Cal. 2022). Pursuant to Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). When dismissing a complaint, "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). A denial of such leave is only proper where doing so would  unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Prejudice is typically the most important factor to consider when deciding a motion for leave to file an amended complaint. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (*citing Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330-31 (1971)).  Here, there is zero prejudice to Plaintiffs with respect to the additional facts set forth in the PTACC because Plaintiffs have been aware of these facts for some time, and perpetrated most of them.

**B.**     **Leave Should Be Granted for Defendants to Add a Claim for Defamation**

In addition to the proposed amendments set forth in Section II.B above and included in the PTACC, Defendants further request that the Court allow Defendants to add a new claim for traditional defamation which will be entirely based on the same allegations that supported Defendants' trade libel claim.

There is no prejudice where leave is granted to add a new legal theory based on already discovered factual assertions. *Cf. Roling v. E*Trade Sec. LLC*, 279 F.R.D. 522, 528 (N.D. Cal. 2012). "Absent prejudice […] there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing leave to

1  amend bears the burden of showing prejudice." *Serpa v. SBC Telecomms., Inc*., 318

2  F. Supp. 2d 865, 870 (N.D.Cal. 2004). Adding new claims after summary judgment

3  motions is appropriate and non- prejudicial where "     the new claims arise out of

4  the same set of operative facts." *Bozdogan v. 23 Ludlam Fuel, Inc*., No. CV 16-1053

5  (JMW), 2022 U.S. Dist. LEXIS 30763, at *7 (E.D.N.Y. Feb. 22, 2022).

6      Here, there is no prejudice to Plaintiffs because all of the additional facts in

7  Defendants' PTACC, and the sole additional legal theory (a defamation claim

8  untethered to trade libel) would be entirely based on facts alleged in the original

9  counterclaim filed in January 2022. No new discovery is necessary or even

10  appropriate inasmuch as it was Plaintiffs strategic choice to wait until after the close

11  of discovery to bring a JOP Motion and further discovery would delay trial. Nor

12  have Plaintiffs distinguished in their discovery requests between one form of

13  defamation over another, having already asked Defendants in written and deposition

14  discovery about their "defamation" claims. [Praskievicz Decl. at ¶ 3.]

15      Moreover, there is inherent overlap between trade libel and defamation

16  claims, with the only pleading difference between the two claims is how damages

17  are pled, further eliminating any concerns of prejudice. And as explained in *Piping

18  Rock Partners, Inc. v. David Lerner Assocs*., 946 F. Supp. 2d 957, 976-78 (N.D.

19  Cal. 2013), a court can treat a trade libel claim as one for defamation even if not

20  labeled as such. In *Thimes Sols. v. TP-Link USA Corp*., 2:19-cv-10374-SB-E, 2022

21  U.S. Dist. Lexis 202913, at *7-8 (C.D. Cal. Nov. 3, 2022) the court similarly

22  observed that beyond a "greater burden of proof" typically applicable to proving

23  damages, there was no other "material difference between proving a false

24  representation in a libel case and proving one in a trade libel case." (citing *Muddy

25  Waters, supra*, Cal. App. 5th at 925 and *Industrial Waste & Debris Box Serv., Inc. v.

26  Murphy*, 4 Cal. App. 5th 1135, 1156 (2016)).

27      This is therefore not a situation where an entirely new legal theory with

28  separate elements of liability must be litigated, nor do Defendants seek to add a new

1  party, where different level of discretion much be exercised.  Rather, in cases like

2  this one, "the court compares the original complaint with the amended complaint

3  and decides whether the claim to be added will likely be proved by the 'same kind

4  of evidence' offered in support of the original pleading." *Rural Fire Protection Co.*

5  *v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966). In making this decision, the court

6  considers whether the 'allegations of a new theory in an amended complaint  . . .

7  involve[] the same transaction, occurrence, or core of operative facts involved in the

8  original claim." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690

9  F.2d 1240, 1259 n.29 (9th Cir. 1982), cert. denied, 459 U.S. 1227, 75 L. Ed. 2d 468,

10  103 S. Ct. 1234 (1983). If necessary, leave to amend should thus be granted.

11  **V.     CONCLUSION**

12         The Court has wide discretion when deciding whether to grant or deny a

13  motion under Rule 12(c), and for all the reasons set forth in this opposition,

14  Defendants respectfully ask the Court to deny the JOP Motion in its entirety. At the

15  very least, the court should grant Defendants' alternative request to file the PTACC

16  with no further discovery or delay of the trial on this matter.

17  DATED:  May 22, 2023                     SOLOMON WARD SEIDENWURM &
                                             SMITH, LLP
18

19

20                                           By:      /s/ Owen M. Praskievicz
                                                  _____
21                                                DANIEL E. GARDENSWARTZ
                                                  OWEN M. PRASKIEVICZ
22                                                Attorneys for Defendants/Counterclaimants

23

24

25

26

27

28