# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

GOPHER MEDIA LLC, et al.,

Plaintiffs,

v.

ANDREW MELONE, et al.,

Defendants.

Case No.:  3:21-cv-01909-RBM-VET

**ORDER GRANTING PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANTS AND COUNTERCLAIMANTS' FIRST AMENDED COUNTERCLAIMS [FRCP 12(C)]**

**[Doc. 56]**

Before the Court is Gopher Media LLC, doing business as Doctor Multimedia ("DMM"), and Ajay Thakore's (collectively, the "Plaintiffs" or "Cross-Complainants") motion for judgment on the pleadings as to Defendants and Counterclaimants' first amended counterclaims ("Motion").[1]  (Doc. 56.)  Andrew Melone and AGFM Family

---

[1] As explained *infra* at III.C, while Plaintiffs' Motion challenges Defendants' first amended counterclaims, it is apparent to the Court that Plaintiffs intended to challenge Defendants' Second Amended Counterclaims (Doc. 36, "SACC")—the operative pleading.  The Court's ruling concerns Defendants' SACC.

1

Enterprises, LLC, doing business as American Pizza Manufacturing ("APM") (collectively, the "Defendants" or "Counter-Claimants"), filed an opposition to Plaintiffs' Motion ("Opposition"). (Doc. 60.) Plaintiffs filed a reply brief in response to Defendants' Opposition ("Reply"). (Doc. 63.)

In Plaintiffs' First Amended Complaint, they allege Defendants engaged and continue to engage in a harassment campaign against them. (Doc. 1.) They assert 18 causes of action concerning, *inter alia*, Defendants' alleged violations of their free speech rights, discrimination on the basis of race, unfair business practices, false advertising, defamation, trade libel, negligence per se, intentional infliction of emotional distress, harassment, and filing of a false police report. (*Id.*) The Court granted the parties' joint motion to dismiss the 18th cause of action for filing a false police report. (Docs. 58–59.)

In Plaintiffs' Motion, they argue that Defendant Melone does not have standing to bring any of the claims alleged in the SACC. (Doc. 56-1 at 13–15, 26, 29–31.)[2] Plaintiffs argue Defendants' trade libel claim (First Cause of Action) fails because they do not allege special damages, the statements at issue are not false statements of fact, and the statements do not concern the quality of APM's products or services. (*Id.* at 15–25.) Plaintiffs argue Defendants' intentional interference with prospective economic advantage claim (Second Cause of Action) fails because they do not identify an economic relationship with a probability of future economic benefit. (*Id.* at 25–29.) Plaintiffs contend Defendants' negligent interference with prospective economic advantage claim (Third Cause of Action) fails for the same reasons and because Defendants did not identify a duty Plaintiffs owed to Defendants. (*Id.* at 29.) Plaintiffs argue Defendants' Unfair Competition Law ("UCL") claim (Fourth Cause of Action) fails because Defendants are neither aggrieved customers nor competitors and they do not identify an underlying constitutional, statutory, or regulatory provision. (*Id.* at 29–31.) Lastly, Plaintiffs contend Defendants' declaratory

---

[2] The Court cites the CM/ECF pagination unless otherwise noted.

relief claim (Fifth Cause of Action) is not ripe and is duplicative of other causes of action. (*Id.* at 31–33.)

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).   For the reasons discussed below, Plaintiffs' Motion (Doc. 56) is **<u>GRANTED WITHOUT PREJUDICE</u>**.

## I.    BACKGROUND

The facts alleged in Defendants' SACC are as follows.

### A.  Inception of Dispute

The City of San Diego converted the parking spaces outside of Defendant APM into 15-minute parking zones.  (SACC ¶ 9.)  Beginning in October 2020, Plaintiff Thakore, on a daily or weekly basis, illegally parked his luxury high-end vehicles outside of Defendant APM.  (*Id.*)  Upon information and belief, Plaintiff Thakore was unhappy with the parking zone changes because it "somehow impeded his ability to frequent other La Jolla business establishments, mainly the neighboring Carino's Restaurant and Verde's El Ranchero." (*Id.* ¶ 10.)  Defendants believe Plaintiff Thakore has a financial, personal, or some other substantial interest or relationship in Carino's due to his "multi-hour visits to the restaurant and his promotion of Carino's in his targeted attacks against [Defendant] APM."  (*Id.*)

### B.  Fake Negative Reviews

On August 12 and 24, 2021, Plaintiff Thakore used Plaintiff DMM "to post more than a hundred fake negative reviews against [Defendant APM], its employees, and [Defendant] Melone personally on Google and Yelp."  (*Id.* ¶ 11.)  Many of the reviews "originated from [Plaintiff DMM] and employees within the company or included [Plaintiff DMM's] company logo in their review."  (*Id.*)  The reviews caused Defendant APM's Google rating to drop from 5 to 2.9 stars during its busy summer season.  (*Id.*)  Before these reviews, Defendant APM received an average of 6 reviews per month, and very few, if any, were negative.  (*Id.*)  A private investigation confirmed that more than 140 false reviews were posted during this time; many reviewers who posted multiple reviews had public ties to Plaintiffs.  (*Id.*)  Google representatives who assisted in removing the fake

3

reviews told Defendants they recognized Plaintiffs as "past offenders of posting false reviews, which Google relied on to expedite the removal of the false reviews." (*Id.* ¶ 15.)

The falsity of the reviews was evidenced by claims such as "[Defendant] APM selling burnt pizza when the business does not even cook the pizza (since it is meant to take home and cook)." (*Id.* ¶ 11.) Other false statements included claiming Defendant APM "smelled like old fish inside," "[t]he owner laughed at me when I said my name for the order.  No respect for humans or animals here," and "[w]orst pizza ever, I got food poisoning." (*Id.*)

Upon information and belief, Plaintiff Thakore "paid or otherwise encouraged employees and agents of [Plaintiff DMM] to post the negative reviews." (*Id.* ¶ 12.) At least one former Plaintiff DMM employee informed Defendants that Plaintiff DMM encouraged this behavior, and Plaintiff Thakore engaged in the conduct in the past. (*Id.*) In 2019, a separate lawsuit was filed against Plaintiffs in the Superior Court of California, County of San Diego (*Marinkovich, et al. v. Thakore, et al.*, Case No. 37-2019-00063378), alleging similar payments and encouragement to post false reviews. (*Id.*)

On August 14, 2021, Defendant Melone asked Plaintiff Thakore to take down the reviews and Plaintiff Thakore responded "this is only the beginning." (*Id.* ¶ 13.) On August 20, 2021, Plaintiff Thakore approached Defendant Melone and said "How do you like those reviews?  Get ready.  There's a 1,000 more where those came from." (*Id.* ¶ 14.)

C. Storefront

At times, Plaintiff Thakore "would sit in his vehicle outside of [Defendant APM] while blowing marijuana smoke into the restaurant and toward its employees and customers." (*Id.* ¶ 16.) On at least one occasion, he "threw marijuana paraphernalia at an [APM] employee who was also a minor." (*Id.*)

At other times, he would display messages on his vehicle attacking Defendant APM, including on September 26, 2021, putting a sign on his Ferrari that read "[o]nly losers get Take N Bake pizza." (*Id.* ¶ 17.) Between September 29 and October 2, 2021, Plaintiff Thakore parked his Maybach in front of Defendant APM with the sign "Take N Bake Pizza

4

Sucks." (*Id.* ¶ 18.)  On October 4, 2021, he parked his Ford Raptor in front of Defendant APM for several days displaying "gun scopes" over the sign "Take N Bake Pizza" and leveled false accusations of racism targeting Defendant APM. (*Id.* ¶ 19.)  On at least two occasions on October 3 and 9, 2021, Defendants are informed and believe Plaintiff Thakor commissioned planes to fly over Defendant APM with messages including "Carinos Pizza is Better Than Take-n-Bake" and "Just Say No to Take-n-Bake Pizza." (*Id.* ¶ 20.)  On one occasion, Plaintiff Thakore disrupted Defendant APM's business by parking all of his cars in front of the store to block customer parking and honked his horn for 30 seconds two times during business hours. (*Id.* ¶ 25.)

### D. Payment to Harass

On multiple occasions, Plaintiff Thakore publicly paid individuals to harass Defendant APM on Instagram, including by ordering from Carino's pizza and mentioning Defendant APM "sucks" in exchange for $100 worth of free food. (*Id.* ¶ 21.) Consequently, on one occasion, Defendant APM received seven calls in five minutes with messages such as "[y]our pizza fucking sucks," "[f]uck you for kicking dogs and being racist," and "I'll never come eat at your restaurant, ever." (*Id.* ¶ 22.)  The messages pertained to inflammatory and objectively false statements Plaintiff Thakore posted to social media, including that Defendant APM "[k]icks handicapped dogs, uses frozen crust, hates anyone of color, despises the first amendment and gets sued for 10 million dollars. If you support Take n Bake pizza you support animal abuse, racism and frozen crust" and that "he" at "Take n Bake" called Plaintiff Thakore a "sandn***er." (*Id.* ¶ 23.)

### E. Customer Harassment

On October 5, 2021, an APM customer entered Defendant APM crying, asking to use their business phone after she confronted Plaintiff Thakore about the derogatory/inflammatory vehicle wraps. (*Id.* ¶ 24.)  The customer explained Plaintiff Thakore and his associate "retaliated by accosting and taking her phone away from her. She called the police and filed a report." (*Id.*)

///

F. <u>Conduct After Filing of This Case (Complaint Filed November 9, 2021)</u>

On November 10, 2021, Plaintiff Thakore parked in front of Defendant APM and opened a briefcase with thousands of dollars, dumping it on the sidewalk in front of customers and stating, "This is suit money motherf**er!" (*Id.* ¶ 26.)  On December 8, 2021, while Defendant Malone was speaking with customers, Plaintiff Thakore yelled "You're going down b**ch!" (*Id.* ¶ 27.)

G. <u>Plaintiff Thakore's Criminal History</u>

Plaintiff Thakore's increasingly volatile conduct is concerning given his criminal history. (*Id.* ¶ 28.)  On Augst 23, 2019, Plaintiff Thakore pled guilty to making a criminal threat (Cal. Penal Code § 422) and vandalism (Cal. Penal Code § 594). (*Id.*)

H. <u>Response to Counterclaims (Initial Counterclaims filed January 3, 2021)</u>

When Defendants filed their initial counterclaims in this matter, "[Defendant] APM experienced a series of attacks and vandalism at its store." (*Id.* ¶ 29.)  On January 12, 2022, Defendant APM's sign was slashed, and a police report was filed. (*Id.*)  On February 11, 2022, the day after Plaintiff Thakore accused Defendant APM of calling the police on him for illegally parking in front of the store, Defendant APM's window was smashed. (*Id.*)  Several weeks later, Defendant APM was vandalized when an individual appearing identical to the individual who smashed the window spray painted graffiti on its wall. (*Id.*)  Upon information and belief, Defendants believe these incidents occurred at the direction of or in coordination with Plaintiffs. (*Id.*)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c).  The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 & n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule.") (quoting *Dworkin*

*v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court must not consider matters beyond the pleadings; otherwise, such a proceeding must properly be treated as a motion for summary judgment. *Id.*; *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings … [o]therwise, the proceeding is converted to summary judgment.") (citations omitted).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III.   DISCUSSION

### A. Extrinsic Evidence

Defendants cite extrinsic evidence in support of their Opposition. (*See* Doc. 60.) Plaintiffs cite extrinsic evidence in support of their Reply. (*See* Doc. 63.) However, Plaintiffs object to the Court considering Defendants' extrinsic evidence because Plaintiffs

must be given notice and an opportunity to present all their evidence prior to the Motion being converted into a motion for summary judgment.  (*See id.* at 4–5.)

The Court declines to exercise its discretion to convert Plaintiffs' Motion into a motion for summary judgment.  *See Yakima Valley Mem'l Hosp.*, 654 F.3d at 925 n.6 ("The district court had discretion not to convert the motion for judgment on the pleadings into a summary judgment motion.").  The Court is not persuaded Plaintiffs' Reply presents a sufficient opportunity for Plaintiffs to present evidence relevant to a motion for summary judgment under Rule 12(d).[3]  *See Open Text Corp. v. Hyland Software, Inc.*, Case Nos. 8:20-cv-2116 DOC (ADSx), 8:20-cv-2123 DOC (ADSx), 2021 WL 3558788, at *2 (C.D. Cal. May 28, 2021) ("It is reversible error for a court to grant a motion to dismiss that has been converted to one for summary judgment, without providing all parties a reasonable opportunity to present material relevant to a Rule 56 motion.") (citations omitted).

Thus, the Court will not consider extrinsic evidence submitted by the parties. Similarly, the Court will not address arguments solely relying on such extrinsic evidence.

**B. Judicial Notice**

Defendants request that the Court take judicial notice of Plaintiff Thakore's other publicly filed lawsuits against Defendant Melone's girlfriend, an APM customer, former employees of DMM, and a DMM competitor.  (Doc. 60 at 13–14; Doc. 60-8.)  Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "Because judicial notice 'bypasses the safeguards which are involved

---

[3] Rule 12(d) specifically provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion*." (emphasis added).

with the usual process of proving facts by competent evidence in district court,' the process of 'taking . . . judicial notice of facts is, as a matter of evidence law, a highly limited process.'" *Harner v. USAA Gen. Indem. Co.*, Case No. 18cv01993-LL-MDD, 2022 WL 1271136, at \*1 (S.D. Cal. Apr. 28, 2022) (quoting *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204–05 (11th Cir. 2004)).

Defendants have not explained why these publicly filed lawsuits are relevant to resolving whether the specific claims in the SACC are adequately pled and the alleged facts in the complaints in these other cases are presumably disputed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting district court may not take judicial notice of disputed facts stated in public records from other court proceedings).

Thus, the Court will not take judicial notice of the other lawsuits.

**C. Facial Deficiency**

Defendants argue Plaintiffs' Motion should be denied because the caption and body of Plaintiffs' Motion challenge Defendants' First Amended Counterclaims instead of the SACC. (Doc. 60 at 14.) However, all of Plaintiffs' arguments in their Motion pertain to the claims in the SACC and each paragraph of the SACC cited in the Motion is correct. (*See* Doc. 56.) Additionally, Defendants have identified no prejudice in construing the Motion as applying to the SACC. *See Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1140–41 (C.D. Cal. 2015) (construing motion for judgment on the pleadings to apply to amended complaint to avoid needless refiling because issues at work are the same and there was no prejudice to plaintiff).

Thus, the Court will not deny Plaintiffs' Motion as facially deficient and construes Plaintiffs' Motion as applying to the SACC.

**D. Timeliness**

Defendants argue Plaintiffs' Motion is untimely and will delay trial. (Doc. 60 at 14–15.) Plaintiffs respond that a motion for judgment on the pleadings may be brought after pleadings close, discovery is complete, and note that a trial date has not been set in this case. (Doc. 63 at 2.)

Rule 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Plaintiffs filed their Motion on the final day for pretrial motions pursuant to the scheduling order in this case. (*See* Docs. 32, 53.) In light of Plaintiffs' Motion, the Court vacated remaining pretrial deadlines on July 20, 2023. (Doc. 68.) While discovery has closed, a trial date has not been set. *See Jaeger v. Howmedica Osteonics Corp.*, Case No. 15-cv-00164-HSG, 2016 WL 520985, at *6 (N.D. Cal. Feb. 10, 2016) (finding motion for judgment on the pleadings not untimely where trial date was over seven months away); *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1190 (N.D. Cal. 2014) (finding 12(c) motion not untimely where trial date was not set and the idea that the motion cannot lie where substantial discovery has taken place "does not appear to be supported by Rule 12(c)"). Defendants' reliance on *United States Commodity Futures Trading Commission v. Maggio*, No. C05-5766RJB, 2007 WL 2900180, at *6 (W.D. Wash. Oct. 1, 2007) is misplaced. Even if the *Maggio* court did construe the defendants' Rule 9(b) motion as a motion for judgment on the pleadings (it is not clear that it did), the motion was filed too close to the trial date. *See id.* Conversely here, no trial date has been set.

Thus, Plaintiffs' Motion is timely.

**E. Standing of Defendant Melone**

Plaintiffs contend that Defendant Melone lacks standing to assert each cause of action. (Doc. 56-1 at 13.) Plaintiffs explain these contentions further for the trade libel, intentional and negligent interference with prospective economic advantage, and unfair competition law claims, but not the declaratory relief claim. (*See id.* at 14–15, 26, 29–30.) The Court will first consider Defendant Melone's standing for the trade libel and intentional and negligent interference with prospective economic advantage claims. Later, the Court will consider Defendants' standing for the unfair competition law claim. The Court does not reach the standing issue on the declaratory relief claim.

a. Trade Libel

Plaintiffs argue Defendant Melone does not have standing to bring a trade libel claim

because trade libel concerns false statements about one's business or products. (Doc. 56-1 at 14–15.) Defendants respond that Plaintiffs' libel specifically targeted Defendant Melone, and he has a direct personal interest in APM affording him standing to pursue a trade libel claim. (Doc. 60 at 24–25.) Plaintiffs respond that Defendant Melone, as an individual, is not a business or product that can assert a trade libel claim and no alleged false statements in the SACC refer to Melone directly. (Doc. 63 at 6–7.)

Plaintiffs have pointed to no case where an owner of a business did not have standing to bring a trade libel claim concerning the quality of the goods they sell. (*See* Doc. 56-1 at 14–15.) A review of case law in this area reveals that most trade libel claims are brought by businesses. However, the Court has identified several cases where owners, or both owners and their businesses, brought trade libel claims. *See Kovesdy v. Kovesdy*, No. C 10-02012 SBA, 2010 WL 3619826, at *4 (N.D. Cal. Sept. 13, 2010) (finding plaintiff, a sole proprietor, adequately pled a claim for trade libel for false statements directed at the character of his business i.e., his competence to provide tax preparation services)*; Allen v. Ghoulish Gallery*, Civil No. 06cv371 NLS, 2007 WL 4207923, at *15–16 (S.D. Cal. Nov. 20, 2007) (denying business owner's trade libel claim because the alleged statements about the quality of his goods were not sufficiently factual to be proven right or wrong); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 383–90 (2004) (denying owner and his company's trade libel claim because the emails at issue were opinions, vague, or true statements); *Erlich v. Etner*, 224 Cal. App. 2d 69, 73–76 (1964) (holding owner's trade libel claim failed due to not alleging special damages). Thus, Defendant Melone has standing to sue for trade libel concerning false statements about Defendant APM.

### b. Intentional and Negligent Interference with Economic Advantage

Plaintiffs argue Defendant Melone cannot assert an intentional interference with prospective economic advantage claim because there are no facts pled that show a prospective advantage to Defendant Melone and that the claim solely concerns prospective economic relations between Plaintiff APM and its potential customers. (Doc. 56-1 at 26.) Plaintiffs point to no statute or case law to support their position. (*See id.*) Plaintiffs

reassert all arguments concerning the intentional interference with economic advantage claim for the negligent interference with economic advantage claim.  (Doc. 56-1 at 29.)

Defendants, including Defendant Melone, allege that they "were in an economic relationship with potential and actual customers of its pizza business that would have resulted in an economic benefit" to them and that Plaintiffs disrupted their relationship with some customers.  (SACC ¶¶ 42, 45.)  This is sufficient for standing purposes for the common law claims of intentional and negligent interference with prospective economic advantage.  *See Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1146, 1153 (E.D. Cal. 2013) (denying motion to dismiss intentional and negligent interference with prospective economic advantage claims brought by company and company's president); *c.f. Davis v. Maryland Bank*, No. 00-04191, 2002 WL 32713429, at *7 (N.D. Cal. June 19, 2002) (finding a company did not have standing for an intentional interference with prospective economic advantage claim because the complaint alleged the individual plaintiff was the one with prospective contracts that were terminated as a result of the defendant's willful conduct, not the company); *Billmeyer v. Plaza Bank of Com.*, 42 Cal. App. 4th 1086, 1098–99 (1995) (finding individual plaintiffs lacked standing for intentional interference with economic relationship claim where the complaint alleged the bankruptcy estate, not the individual plaintiffs, suffered damages from the interference).  Thus, Defendant Melone has standing to sue for intentional and negligent interference with prospective economic advantage.

**F. Trade Libel (First Cause of Action)**

"Trade libel is defined as 'an intentional disparagement of the quality of property, which results in pecuniary damage....'" *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (quoting *Erlich*, 224 Cal. App. 2d at 73).  "Unlike classic defamation, they are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business." *Id.* (citing *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473, 479 (1986)).

"To prove trade libel, Plaintiff must show (1) a statement that (2) was false, (3)

disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages." *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1140 (C.D. Cal. 2009) (citing *Atlantic Mut. Ins. Co. v. J. Lamb. Inc.*, 100 Cal. App. 4th 1017, 1035 (2002)).  "Like defamation, trade libel requires a false statement of fact, not an expression of an opinion." *J-M Mfg. Co. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (2016).  The statement "must be made with actual malice, that is, with knowledge it was false or with reckless disregard for whether it was true or false." *Id.*  California courts look to the Restatement (Second) of Torts in evaluating trade libel claims. *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1990).

a. <u>False Statements</u>

Plaintiffs argue all the statements alleged to be trade libel are not false statements but rather they are opinions, advertisements, commercial speech, or hyperbole.  (Doc. 56-1 at 17–24.)  Defendants respond that Plaintiffs statements were false statements intended to cause them harm.  (Doc. 60 at 16–18.)

"To constitute trade libel, a statement must be false." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001) (citing *Leonardini*, 216 Cal. App. 3d at 572)).  "Since mere opinions cannot by definition be false statements of fact, opinions will not support a cause of action for trade libel." *Id.* at 1010–11 (citing *Hofmann Co. v. E.I. Du Pont De Nemours & Co.*, 202 Cal. App. 3d 390, 397 (1988)).  "Whether a statement is one of fact or opinion is a question of law to be decided by the court." *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1353 (1998) (citing *Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 260 (1986)).  "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context.  However, where a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the plaintiff to plead the facts showing its defamatory meaning." *ComputerXpress, Inc.*, 93 Cal. App. 4th at 1011 (citations omitted).  In addition to the language, the court must "look at the nature and full content of the communication and to the knowledge and understanding of the

audience to whom the publication was directed." *Hofman Co.*, 202 Cal. App. 3d at 398 (citation omitted). "If a statement of opinion implies a knowledge of facts which may lead to a defamatory conclusion, the implied facts must themselves be true." *Prehired, LLC v. Provins*, No. 2:22-cv-00384-TLN-AC, 2022 WL 1093237, at *4 (E.D. Cal. Apr. 12, 2022) (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 972 (N.D. Cal. 2013)). In the Ninth Circuit, "plaintiffs must identify specific statements constituting trade libel." *Id.* at *3 (citing *First Advantage Background Servs. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008)).

The Court finds that Defendants have identified several allegedly false statements concerning the quality of their goods. Those statements, subject to proof of falsehood, include that "[Defendant] APM sell[s] burnt pizza," Defendant APM "smelled like old fish inside," and that a customer "got food poisoning" from Defendant APM. (*See* SACC ¶ 11.) These allegations, in the form of false reviews of Defendant APM online, along with Plaintiff Thakore's statements, raise a reasonable inference of an intent to harm Defendant APM's business. (*See id.* ¶¶ 13 ("this is only the beginning"), 14 ("How do you like those reviews? Get ready. There's a 1,000 more where those came from.").) *See Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 288 (2014) (noting that under Restatement (Second) of Torts Section 629, a statement is disparaging if it casts doubt upon the quality of another's property, the publisher intends the statement to cast doubt, and the recipient's understanding of it as casting doubt was reasonable). Another allegedly false statement concerning the quality of Defendant APM's goods is a post with a picture of Defendant APM's store and the statement that it "uses frozen crust." (*See* SACC ¶ 23.)

Moreover, the Court finds that Defendants have identified several other allegedly false statements that arguably concern the character of Defendant APM's business. Those statements include (1) a false review stating that "[t]he owner laughed at me when I said

14

my name for the order;"[4] (2) a post with a picture of Defendant APM's store and a statement that it "[k]icks handicapped dogs;" and (2) a post stating "he" called Plaintiff Thakore a "sandn***er" as he walked by "Take N Bake."[5]   (*See id.* ¶¶ 11, 23.)   Those alleged statements arguably pertain to the character of Defendant APM's business, including the allegation of making a specific racist statement to someone walking by the business.  *C.f. Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010) ("The assertion of racism, when viewed in that specific factual context, is not merely a hyperbolic characterization of Overhill's black corporate heart—it represents an accusation of concrete, wrongful conduct.").  They explicitly and implicitly implore customers not to support Defendant APM, at least in part, because the business engages in animal abuse and racism.  *See Kovesdy*, 2011 WL 3619826, at *4.

Lastly, the Court concludes that the remaining alleged statements are opinions, not statements of fact.  They concern opinions about Defendants and their product, (*see* SACC ¶¶ 11, 17–21, 23), or general allegations of racism, *(see id.* ¶ 19).  *See Lopez*, 190 Cal. App. 4th at 1262 ("We agree that general statements charging a person with being racist, unfair,

---

[4] While Plaintiffs argue Defendant Melone is one of several owners of APM, the SACC alleges Defendant Melone is "*the* owner and operator" of APM.  (SACC ¶ 3) (emphasis added.)  In resolving Plaintiffs' Motion, the Court must "accept[s] factual allegations in the [SACC] as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.

[5] This reference to "Take N Bake" must be understood in the context of Plaintiff Thakore's other alleged statements and actions, including placing signs on his vehicles outside of Defendant APM, flying a plane over Defendant APM, and posting a picture of APM's store, all while criticizing "Take N Bake" pizza.  (*See* SACC ¶¶ 17–20, 23.)  That Plaintiff Thakore was walking by "Take N Bake" can be understood by reasonable implication to refer to Defendant APM.  *See Hartford Cas. Ins. Co.*, 59 Cal. 4th at 293 ("To meet this demand at the pleading stage, a plaintiff must allege that 'the statement at issue either expressly mentions him or refers to him by reasonable implication.'") (quoting *Total Call Internat. Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 170 (2010)).  Additionally, whether this allegedly false statement refers to a statement by Defendant Melone or another employee of APM makes no difference.  Either way, it arguably imputes the character of Defendant APM's business.

or unjust—without more—such as contained in the signs carried by protestors, constitute mere name calling and do not contain a provably false assertion of fact."). The Court also concludes Defendant Melone may not proceed on a theory of trade libel for any allegedly false statement concerning his reputation. (*See e.g.*, SACC ¶¶ 11 ("The owner Andrew is a real rude person").) *See Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340 (2006) ("Whereas defamation concerns injury to the reputation of a person or business, trade libel involves false disparagement of the quality of goods or services.").

      b.  Special Damages

    Plaintiffs argue Defendants failed to allege special damages, including by identifying particular customers and transactions of which Defendants were deprived due to Plaintiffs' trade libel. (Doc. 56-1 at 15–17.) Defendants respond they need not identify particular customers or transactions, even though they do identify some on the receiving end of the libel, because they assert a loss of market theory. (Doc. 60 at 18–14.)[6]

    "Under California law, 'a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.'" *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1043 (C.D. Cal. 1998) (citation omitted). "If an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g); *see also NPK Indus. v. Hunter*, Case No. 15-cv-00811-SI, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015) ("[A] cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.") (internal citations omitted). The plaintiff must "identify particular customers and transactions of which it was deprived as a result of the libel." *Hunter*, 2015 WL 5461667, at *4 (quoting *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th at 109 (2004)).

---

[6] The Court will not consider Defendants' evidence concerning lost profits and their expert's opinion concerning the impact of a decreased online rating. The Court declines to consider this evidence because, as discussed *supra* at III.A, the Court will not consider documents beyond the pleadings.

Alternatively, the plaintiff can proceed on a theory of loss of market or general business loss where they can plead the loss with reasonable certainty and eliminate other causes.  *See Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641–42 (2d Cir. 2015) (finding plaintiffs failed to meet their pleading burden for loss of the market in part because plaintiffs failed to plead the causation requirement of Section 633).  Under the Restatement (Second) of Torts Section 626 (Disparagement of Quality–Trade Libel) comment (e), recoverable pecuniary loss is cross-defined in Section 633.  Comment (h) of Section 633 explains that "[w]idely disseminated injurious falsehood may … cause serious and genuine pecuniary loss by affecting the conduct of a number of persons whom the plaintiff is unable to identify and so depriving him of a market that he would otherwise have found.  *When this can be shown with reasonable certainty*, the rule requiring the identification of specific purchasers is relaxed and recovery is permitted for the loss of the market." (emphasis added).  Comment (h) goes on to explain that such loss, analogous to the loss of profits of an established business, "may be proved by circumstantial evidence showing that the loss has in fact occurred, and eliminating other causes."

In *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, the plaintiffs argued they sufficiently established special damages for trade libel by pleading they suffered "lost sales, disruption of business relationships, loss of market share and of customer goodwill and by requesting $3 million dollars in damages in their prayer for relief."  No. CV 14-03954 DDP (MANx), 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014).  The district court held the plaintiffs' general statements of economic loss did not sufficiently identify special damages, including what portion was attributable to the alleged libelous statements.  *Id.*  The district court also explained that, to recover damages based on general business loss, Plaintiffs "should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication."  *Id.* (quoting *Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1047); *see also Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, Civ. No. S-09-580 FCD/JFM, 2009

17

WL 2462505, at *5–6 (E.D. Cal. Aug. 11, 2009) (finding plaintiff adequately pled special damages in the form of lost sales evidenced by its decrease in market share due to the defendant's dissemination of alleged false statements).

Here, Defendants do not identify particular customers and transactions they lost as a result of Plaintiffs' trade libel. Nor do Defendants allege sufficient facts to show, with reasonable certainty, general business loss or loss of the market. *See* Restatement (Second) of Torts Section 633, comment (h); *Homeland Housewares, LLC*, 2014 WL 6892141, at *4; *see also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004) (holding plaintiff failed to plead special damages where plaintiff did not specify amount of damages nor provide sufficient information to recover for damages for a general loss of customers). Defendants also fail to allege other factors did not cause their loss or specify what portion of the loss is attributable to the alleged libelous statements. *See* Restatement (Second) of Torts Section 633, comment (h); *Bilinski*, 632 F. App'x at 641–42; *Homeland Housewares, LLC*, 2014 WL 6892141, at *4.

While Defendants point to slander of title cases that have endorsed attorneys' fees and costs as evidence of pecuniary damages or even special damages, (*see* Doc. 60 at 22–23), California courts have not extended this principle to trade libel. *See Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, No. CV 12-10849(CAS) (FFMx), 2013 WL 5352698, at *9 (C.D. Cal. Sept. 23, 2013) ("While plaintiff is correct that attorney's fees and costs often constitute a form of special damages … they are not on their own a sufficient basis for a trade libel claim; plaintiff must allege special damages incurred by its business as a result of defendants' statements, and not as a result of plaintiff's own prosecution of a lawsuit."); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 986 (N.D. Cal. 2010) ("If a claim for attorneys fees and costs of suit could qualify as pecuniary or special damages for purposes of pleading a trade libel claim, then each and every false statement would be actionable without a showing that the false statement caused damage to an individual's trade or property.").

Moreover, Defendants' reliance on the Restatement (Second) of Torts Section

633(2)(b) is misplaced. (*See* Doc. 60 at 23.) Section 633(2)(b) concerns "proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify," not impossible-to-identify lost customers. Nor were Defendants in the business of mail-only orders through which lost customers are impossible to identify. (*See id.* at 15–16.) *See Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 155–57 (S.D.N.Y. 1983).

Thus, Plaintiffs' Motion is **GRANTED** for the trade libel claim.[7]

## G. Intentional Interference with Prospective Economic Relations (Second Cause of Action)[8]

Plaintiffs argue Defendants failed to identify a specific economic relationship with a probability of future economic benefit as opposed to a hope or desire of the same. (Doc. 56-1 at 25–29.) Defendants respond Plaintiff Thakore harassed Defendants' existing customers, inspired or funded vandalism of APM, which deterred customers from coming to APM, and incentivized unknown potential or existing customers to indicate they will never eat at APM. (Doc. 60 at 26–28.)[9] Plaintiffs respond that Defendants failed to plead a probability of future economic benefit from a business relationship and failed to identify such an economic relationship with a third party that was disrupted. (Doc. 63 at 10–11.)

To prove intentional interference with prospective economic advantage, a plaintiff must prove the following elements: "(1) an economic relationship between the plaintiff and

---

[7] Because the Court grants Plaintiffs' motion for the trade libel claim, any injunctive relief requested by Defendants arising from trade libel necessarily fails. (*See* Doc. 60 at 24; SACC, Prayer for Relief.)

[8] While Defendants title their second and third causes of action intentional and negligent interference with prospective economic relations, it is clear to the Court that Defendants mean the causes of action of intentional and negligent interference with economic advantage recognized in California.

[9] The Court will not consider Defendants' expert report. The Court declines to consider this evidence because, as discussed *supra* at III.A, the Court will not consider documents beyond the pleadings.

some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citing *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996)) (internal quotation marks omitted).  Additionally, the plaintiff must prove (6) "defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392–93 (1995) (citation omitted).  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159.  Plaintiffs seek dismissal based on the first and fourth elements.

    a.  Economic Relationship

    Intentional interference with prospective economic advantage applies to "*existing* noncontractual relations which hold the promise of future economic advantage." *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 524 (emphasis in original).  "The law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained the probability of future economic benefit to the plaintiff." *Id.* at 522 (internal quotation marks and citations omitted).  "Merely referring to customers in general is not sufficient to show a specific prospective business relationship." *Nestle USA, Inc. v. Crest Foods, Inc.*, No. LA CV16-07519 JAK (AFMx), 2017 WL 3267665, at *14 (C.D. Cal. July 28, 2017) (citation omitted).  Nor do "general conclusory allegations regarding lost sales and the damage to the relationships between Plaintiff and its customers … satisfy the pleading requirements" of the first element of the claim. *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019).

    Defendants argue they have an economic relationship with a promise of future economic advantage from the existing customers that Plaintiff Thakore allegedly yelled,

20

honked his horn, threw cash, and blew marijuana smoke at, as well as those who saw Plaintiff Thakore's sign that read "[o]nly losers get Take n Bake pizza." (*See* Doc. 60 at 25; SACC ¶¶ 16–17, 25–27.)   It is not clear whether Plaintiff Thakore's yelling at Defendant Melone while he was speaking with customers or throwing cash in the presence of customers in a reference to a lawsuit outside of APM was aimed at customers of APM as opposed to Defendants.  But even viewed in a light most favorable to Defendants that this conduct was directed at their existing customers, they fail to identify those customers, even in a categorical sense, with whom they have an existing economic relationship.

To overcome this issue, Defendants point to *Oracle Am., Inc. v. CedarCrestone, Inc.*, No. 12-cv-04626 NC, 2013 WL 3243885 (N.D. Cal. June 26, 2013).  In *Oracle Am., Inc.*, the district court held the plaintiff adequately pled the requisite economic relationship with some third party even though it did not plead the elements of the claim specifically as to each customer.  *See id.* at *4.  The alleged customers at issue were the plaintiff's software licensee and support customers who became the defendant's clients.  *Id.*  The district court determined that the economic relationship was adequately pled because the defendant should possess the identities of those customers or should be able to obtain them in discovery.  *Id.*  Here, the SACC does not identify the customers at issue beyond specifying the conduct of Plaintiff Thakore during which existing customers were present.  Defendants have not argued that Plaintiffs possess the identities of these customers or could obtain them in discovery.[10]

Additionally, the SACC does not identify either existing or prospective customers that were deterred by Plaintiffs alleged directed or inspired vandalism.  (*See* SACC ¶ 29.) In any event, unidentified prospective customers would be insufficient to prove an existing

---

[10] Defendants argue that their proposed third amended counterclaims include allegations of customers Defendants had personal knowledge of interfering with.  (*See* Doc. 60 at 27.) The Court declines to consider this argument because (as discussed *supra* at III.A) the Court will not consider documents beyond the pleadings.

economic relationship.  *See Westside Ctr. Assocs.*, 42 Cal. App. 4th at 522–24.  Lastly, Defendants claim that the unknown individuals Plaintiffs allegedly paid and called APM with messages such as "[y]our pizza fucking sucks" and "I'll never come eat at your restaurants, ever" may include prospective and current customers.  (*See* Doc. 60 at 26; SACC ¶ 22.)  Even if Plaintiffs may have the identities of these individuals due to Plaintiff Thakore's Instagram offer for payment (*see* SACC ¶ 21), *see Oracle Am., Inc.*, 2013 WL 3243885, at *4, there is no factual allegation in the SACC from which the Court can reasonably infer these individuals may have been existing customers of APM.  Thus, Defendants have failed to allege an economic relationship with the probability of future economic benefit to Defendants.

b.  Actual Disruption

Defendants' claim also fails to allege the element of actual disruption beyond the conclusory assertion that Defendants' "relationship with some customers was disrupted." (*See* SACC ¶ 46.)  *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311–12 (N.D. Cal. 1997) (finding plaintiffs failed to allege that their relationship with a third party was "actually disrupted" due to the defendants' actions in inducing the plaintiff's former employees to leave their company or that alleged defamatory statements disturbed negotiations or awards of business with a third party).  Nowhere in the SACC do Defendants allege they lost the business of existing customers because of Plaintiffs' actions.  See *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) ("In its complaint, Sybersound merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted.' Sybersound does not allege, for example, that it lost a contract nor that a negotiation with a Customer failed.").

Thus, Plaintiffs' Motion is **<u>GRANTED</u>** for intentional interference with prospective economic advantage.

///

///

**H. Negligent Interference with Prospective Economic Relations (Third Cause of Action)**

Plaintiffs argue the negligent interference with prospective economic relations claim must fail for the same reasons the intentional interference with prospective economic relations claim failed and that Defendants failed to allege a duty Plaintiffs owed them. (Doc. 56-1 at 29.)  Defendants incorporate their response as to the intentional interference with prospective economic advantage claim.  (Doc. 60 at 28.)

"[A] plaintiff bringing a claim for negligent interference with prospective economic advantage must sufficiently allege: (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence cause[d] damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *F.M. Tarbell Co. v. A & L Partners, Inc.*, No. CV 10-1589 PSG (Ex), 2011 WL 1153539, at *5 (C.D. Cal. Mar. 23, 2011) (citing *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997)).

Defendants allege Plaintiffs "failed to act with reasonable care by engaging in a campaign of unlawful harassment" against Defendants and they "knew or should have known" Defendants' relationship with potential or actual customers would be disrupted." (SACC ¶¶ 52–53.)  Such an allegation concerning a lack of ordinary care, even without the presence of a specific duty of care, is sufficient for negligent interference with prospective economic advantage.  *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 805–06 (1979) ("This court has repeatedly eschewed overly rigid common law formulations of duty in favor of allowing compensation for foreseeable injuries caused by a defendant's want of ordinary care … Similarly, respondent is liable if his lack of ordinary care caused foreseeable injury

23

to the economic interests of appellant.").

However, for the reasons discussed *supra* at II.G concerning intentional interference, this cause of action fails.  Defendants have failed to identify an existing economic relationship with the probability of future economic benefit or advantage to Defendants and actual disruption with that relationship.

Thus, Plaintiffs' Motion is **GRANTED** for negligent interference with prospective economic advantage.

## I. Unfair Competition (Fourth Cause of Action)

Plaintiffs argue neither Defendant has alleged facts establishing either are aggrieved customers or competitors entitled to invoke the protections of Business & Professions Code § 17200, otherwise known as the Unfair Competition Law ("UCL").  (Doc. 56-1 at 29–32.) Defendants respond, due to Plaintiffs' ownership interest in Carino's, Plaintiffs are their competitors.  (Doc. 60 at 28.)

Additionally, Plaintiffs argue Defendants' UCL claim fails because it is untethered to any constitutional, statutory, or regulatory provision.  (Doc. 56-1 at 31.)  Defendants respond that if identifying statutes is required, they request leave to amend to cite at least California Civil Code § 43 and § 1708.  (Doc. 60 at 28–29.)

The UCL's purpose is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]."  Cal. Bus. & Prof. Code § 17200.  "Each of these three adjectives captures a separate and distinct theory of liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks and citations omitted).

a.  <u>Standing of Defendants</u>

In 2004, the voters of California passed Proposition 64, which restricted standing for

24

individuals alleging UCL claims to persons[11] who "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (quoting Cal. Bus. & Prof. Code § 17204)). "The 'lost money or property' requirement therefore requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant." *See id.* at 1104 (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011)). "[T]he quantum of lost money or property necessary to show standing is only so much as would suffice to establish [Article III] injury in fact." *See id.* (citing *Kwikset Corp.*, 51 Cal. 4th at 324). The core inquiry is whether the plaintiff has suffered "*economic injury* ... caused by ... the unfair ... practice ... that is the gravamen of the claim." C*al. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1086 (2023) (citing *Kwikset Corp.*, 51 Cal. 4th at 322) (emphasis in original). "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of lost money or property, nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm." *Kwikset Corp.*, 51 Cal. 4th at 323 (internal quotation marks and citations omitted).

Plaintiffs are incorrect that Defendants must be aggrieved consumers or competitors of Plaintiffs to have standing to bring a UCL claim. (*See* Doc. 56-1 at 30–31.) In *Linear Technology Corp. v. Applied Materials, Inc.*, while the court stated the "alleged victims are

---

[11] Person under the UCL includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Cal. Bus. & Prof. Code § 17201.

neither competitors nor powerless, unwary consumers," it went on to explain that the plaintiff and other alleged victims were "sophisticated corporate customers who have entered or will enter their own contracts with respondents."  152 Cal. App. 4th 115, 135 (2007).  The court concluded that, under those circumstances, and to the extent the plaintiff purports to represent other customers, permitting its UCL claim could deprive the defendant's "alleged victims of the individual opportunity to seek remedies far more extensive than those available under the UCL."  *Id.* (quoting *Rosenbluth Int'l, Inc. v. Superior Ct.*, 101 Cal. App. 4th 1073, 1079 (Sept. 11, 2002)).[12]

Here, Defendants do not assert a representative UCL claim nor were they in a contract with Plaintiffs.  (*See* SACC ¶¶ 58–61.)  To the extent Plaintiffs argue *Sacramento E.D.M., Inc. v*, 965 F. Supp. 2d at 1151 and *Dillon v. NBCUniversal Media LLC*, No. CV 12-09728 SJO (AJWx), 2013 WL 3581938, at *7 (C.D. Cal. June 18, 2013) extended *Linear Technology Corp.* to prohibit any UCL claim not brought by a consumer or competitor, the Court rejects such an argument.  Section 17204 is clear that persons, including corporations under § 17201, who have suffered "injury in fact" and "lost money or property as a result of" the business act or practice at issue may bring a UCL claim.  *See Cal. Med. Ass'n*, 14 Cal. 5th at 1086.  However, Defendants have failed to allege an economic injury in the form of lost money or property resulting from any specific unlawful or unfair act of Defendants anywhere in the SACC.

> b.  Unlawful, Unfair or Fraudulent Business Act or Practice

"The California Supreme Court has held that [S]ection 17200 defines 'unfair competition' very broadly, to include anything that can properly be called a business

---

[12] In *Rosenbluth International*, *Inc.*, the court similarly did not allow the plaintiff's representative UCL claim to proceed because the alleged victims were sophisticated corporations "each of which negotiates contracts individually with [Defendant]" and allowing plaintiff's representative claim could deprive other alleged victims "of the individual opportunity to seek remedies far more extensive than those available under the UCL, which limits the plaintiffs to injunctive relief and restitution."  *Id.* at 1078–79.

practice and that at the same time is forbidden by law." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citing *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 395 (1992) (internal quotation marks omitted)).  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns , Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).

"To prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California 'statute or regulation.'" *Beasley v. Tootsie Roll Indus., Inc.*, 85 Cal. App. 5th 901, 912 (2022) (quoting *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020)).  "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)). "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." *Id.* (quoting *Stokes v. CitiMortgage, Inc.*, No. CV 14–00278 BRO (SHx), 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014)); *see also Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law.  Here no violation of the Unruh Act is capable of proof given the facts placed before this court … If the Unruh Act claim is dismissed, then there is no 'unlawful' act upon which to base[ ] the derivative Unfair Competition claim.").

However, the statutory language also "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Id.*  "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,' (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially

injurious to consumers,' or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (internal citations omitted).

The first "tethered" unfairness prong concerns unfair competition claims by a competitor. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (2010) ("[I]n the context of an unfair competition claim by a *competitor*, the term 'unfair' in [Business and Professions Code] section 17200 'means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'") (quoting *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187). Some California courts have applied the latter two unfairness prongs only to consumer actions. *See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254–55 (2009) (explaining the definition of "unfair" business practice in the context of consumer actions is less settled than in competitor actions and some Courts of Appeal apply the pre-*Cel-Tech Communications, Inc.* definitions of "unfair"). Other California courts have applied a different test to consumer actions articulated in *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006). *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1376 (2012) ("In consumer cases arising under the UCL, a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves.") (citing *Camacho*, 202 Cal. App. 4th at 1376).

Here, Defendants allege Plaintiffs' actions articulated in the SACC "constitute unlawful and unfair business practices" under the UCL. (SACC ¶ 59.) Yet, under the unlawful prong, Defendants do not adequately allege any predicate violation of other laws in the SACC, nor will the inadequately pled causes of action above suffice. *See Doe*, 982 F.3d at 1214 (finding UCL claim under unlawfulness prong failed for the other predicate claims the district court dismissed but was adequately pled for the predicate claim the Ninth

Circuit ruled was adequately pled).[13]

Moreover, for the unfairness prong, Defendants allege Plaintiffs engaged in a slew of immoral, unethical, and oppressive conduct.[14]  But Defendants do not allege they are consumers of Plaintiffs subject to that relaxed standard.  *See Morgan*, 177 Cal. App. 4th at 1254–55; *Camacho*, 202 Cal. App. 4th at 1376.  Nor do they allege they are competitors of Plaintiff DMM.  And even if the Court were to accept that Defendants are competitors with Plaintiff Thakore because they pled he had a financial, personal, or other substantial interest in Defendants' direct competitor, Carino's Restaurant, (*see* SACC ¶ 10), Defendants have not pled that any of Plaintiff Thakore's actions violate a "constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law."  *Durell*, 183 Cal. App. 4th at 1364.

Thus, Plaintiffs' Motion is **<u>GRANTED</u>** for the UCL claim.

**J.  Declaratory Relief**

Plaintiffs argue Defendants' request for declaratory relief is duplicative of other causes of action and should be dismissed.  (Doc. 56-1 at 31–32.)  Plaintiffs also argue that whether they must cease all alleged harassing and unlawful conduct is a jury question, not one for declaratory relief.  (*Id.* at 32–33.)  Defendants respond that Plaintiffs' conduct is ongoing and thus they request declaratory or injunctive relief from the Court.  (Doc. 60 at 29.)  Plaintiffs respond that declaratory relief is both duplicative of other causes of action and the alleged tortious actions it would cover have already occurred.  (Doc. 63 at 11.)

Defendants' claim for declaratory relief is pursuant to California Code of Civil

---

[13] While Defendants in their opposition identify California Civil Code § 43 and § 1708, (*see* Doc. 60 at 21–22), they failed to identify these statutes in the SACC.

[14] Specifically, Plaintiffs' posting fake negative reviews of Defendant APM, throwing marijuana paraphernalia at an APM employee who is a minor, taking an APM customer's phone, parking cars in front of Defendant APM and honking the horn on two occasions for 30 seconds each, and directed or coordinated vandalism of Defendant APM.  (*See* SACC ¶¶ 11–12, 16, 24, 25, 29.)

Procedure § 1060.  (SACC ¶ 64.)  Under § 1060, "[t]o qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations.'"  *Jolley v. Chase Home Fin.*, LLC, 213 Cal. App. 4th 872, 909 (2013) (quoting *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011)).

Although the parties do not raise the issue, because this Court's jurisdiction over this case arises out of its federal question jurisdiction, the Court must consider "whether the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, or the California Declaratory Relief Act ("CDRA"), Cal. Civ. Proc. Code § 1060, applies to [Defendants'] cause of action for declaratory relief."  *Diamond Real Est. v. Am. Brokers Conduit*, Case No. 16-CV-03937-HSG, 2017 WL 412527, at *10 (N.D. Cal. Jan. 31, 2017).   Due to the procedural, rather than substantive, nature of the DJA, the Court finds the DJA applies to Defendants' claim for declaratory relief.  *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (in federal diversity case, explaining California district courts are split on whether to apply the CDRA or DJA in diversity jurisdiction cases and finding DJA governs declaratory relief) (citing *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir. 1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (1998) (en banc) ("[w]hen [defendant] removed the case to federal court, based on diversity of citizenship, the claim remained one for declaratory relief, but the question whether to exercise federal jurisdiction to resolve the controversy became a procedural question of federal law.")).

The DJA states in part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

30

Under the DJA, "[c]ourts conduct a two-part analysis to determine if declaratory relief is appropriate under the circumstances: (1) the court determines whether an 'actual controversy' exists between the parties as required by Article III of the Constitution; and (2) the court considers, in its discretion, whether its jurisdiction should be extended over the actual controversy." *Dias v. Spartan Micro, Inc.*, Case No. 8:22-cv-00834-JVS (KES), 2022 WL 17216820, at *7 (C.D. Cal. Sept. 14, 2022).[15] "Article III requires that there be a substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at *8 (quoting *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991)). "The dispute must be (1) 'definite and concrete, touching the legal relations of parties having adverse legal interests'; (2) 'real and substantial'; and (3) 'admit[ting] of specific relief through a decree of a conclusive character, as distinguishable from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d at 1221).

"Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Padres Hacia Una Vida Mejor v. McCarthy*, 614 F. App'x 895, 896 (9th Cir. 2015) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008)). In determining whether maintaining jurisdiction over a declaratory judgment action is appropriate, a district court is to consider a variety of factors, including whether retaining jurisdiction would "serve a useful purpose in clarifying the legal relations at issue." *Id.* at 896–97 (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011)).

"As a procedural statute dependent on an underlying cause of action, the DJA makes available an 'additional remedy to litigants without creating an independent 'theory of

---

[15] "[A]s a threshold requirement, a declaratory relief action must involve an actual 'case or controversy' so the court does not render an impermissible advisory opinion." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1268 (S.D. Cal. 2007) (citing *Flast v. Cohen*, 392 U.S. 83, 95–96 (1968)).

recovery.'" *Diamond Real Est.*, 2017 WL 412527, at \*10 (citing *Team Enters., LLC v. W. Inv. Real Estate Tr.*, 721 F. Supp. 2d 898, 911 (E.D. Cal. 2010)).  However, 'where the plaintiff's underlying claims fail, so too does his declaratory relief claim.'" *Id.* (quoting *Canatella v. Reverse Mortg. Sols. Inc.*, Case No. 13-cv-05937-HSG, 2016 WL 6070508, at \*7 (N.D. Cal. Oct. 17, 2016).

Defendants assert an "actual controversy" exists giving "rise to questions about the parties' rights and obligations" and that Defendants seek a declaration that Plaintiffs "must cease all harassing and unlawfully disparaging conduct toward [Defendants]."  (SACC ¶¶ 63–64.)  Defendants do not assert or state a cause of action concerning harassment or specify the unlawful disparaging conduct that is subject to declaratory relief.  And even if Defendants tie their request for declaratory relief to another cause of action, "[s]ince the Court dismisses the underlying claims, the Court also [grants] Defendant's motion to dismiss the declaratory judgment cause of action."  *Fallbrook Hosp. Corp. v. California Nurses Ass'n/Nat. Nurses Org. Comm.*, No. 13cv1233-GPC(WVG), 2013 WL 5347271, at \*3 (S.D. Cal. Sept. 23, 2013); *see also Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW(FFMx), 2012 WL 6140962, at \*8 (C.D. Cal. Dec. 11, 2012) ("Declaratory and injunctive relief do not lie where all other claims have been dismissed.").

Thus, Plaintiffs' Motion is **<u>GRANTED</u>** for the declaratory relief claim.

**K. Leave to Amend**

    a.  <u>Existing Claims</u>

Defendants request that, if the Court grants any portion of the Motion, that they be granted leave to amend; they argue there is no prejudice to Plaintiffs who were aware of the new facts alleged in their third amended counterclaims and that Plaintiffs perpetrated those alleged facts.  (Doc. 60 at 30.)

While courts exercise broad discretion in deciding whether to allow amendment of a pleading, they have generally adopted a liberal policy.  *See U.S. for Benefit & Use of Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*, 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1324 (9th Cir. 1982), *rev'd on other grounds*,

459 U.S. 810 (1982)).  Accordingly, leave is generally granted unless the Court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "The party opposing leave to amend bears the burden of showing prejudice."  *Serpa v. SBC Telecomms.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

With respect to the claims in the SACC, Plaintiffs have set forth no basis upon which granting leave to amend would prejudice them, would cause undue delay, or that the request involves bad faith.  Plaintiffs merely state leave to amend should not be granted. (*See* Doc. 56-1 at 13, 33; Doc. 63 at 4, 11.)  Defendants have not previously sought leave to amend their counterclaims, despite amending once as of right to properly identify Plaintiffs.  (*See* Docs. 34, 36.)  And Plaintiffs are presumably aware of the evidence uncovered in discovery that would underly any allegations added to the claims already pled in the SACC.  The Court also does not find that amendment would be futile.

### b. New Claim

Defendants request the Court allow them to add a new claim for defamation based on the same allegations supporting their trade libel claim.  (Doc. 60 at 30–32.)  Defendants argue adding a defamation claim would be based on the same facts alleged in the original counterclaims filed in January 2022, no new discovery would be necessary, and there is inherent overlap between trade libel and defamation claims.  (*Id.* at 31–32.)

Defendants could have raised this claim back in January 2022.  Thus, the Court concludes Defendants engaged in undue delay in not seeking to add the claim until now. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986) ("late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the

33

cause of action.") (citing *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983)); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.").

However, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Id.* (quoting *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973)). Plaintiffs bear the burden of demonstrating prejudice from the proposed amendment. *See DCD Programs, Ltd.*, 833 F.2d at 187. Yet Plaintiffs do not specifically address Defendants' request for leave to amend to add the defamation claim nor articulate how adding such a claim would cause prejudice to them. Plaintiffs do not argue Defendants' request was due to bad faith. Nor do Plaintiffs argue that such a claim would require additional discovery, while Defendants contend that it would not, (*see* Doc. 60 at 31). Plaintiffs have presented no reason for this Court to believe that amendment would greatly alter the nature of this litigation. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding district court did not abuse discretion in denying leave to amend due to a two-year delay and the new claims would "greatly alter[ ] the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.").

Thus, the Court **GRANTS** Defendants' request for leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is **GRANTED WITHOUT PREJUDICE**. Defendants must file their amended counterclaims on or before January 12, 2023. Plaintiffs' response to the amended counterclaims must be filed on or before January 26, 2023.

///

1    **IT IS SO ORDERED.**

2    DATE:  December 19, 2023

3    _____

4    HON. RUTH BERMUDEZ MONTENEGRO
     UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:21-cv-01909-RBM-VET