PAMELA C. CHALK (Bar No. 216411)
pamchalk@doctormultimedia.com
Chief Litigation Counsel
Doctor Multimedia
4303 La Jolla Village Drive Suite 3130
San Diego, CA 92122
Tel: 619.788-8858

Attorneys for GOPHER MEDIA LLC, dba Doctor Multimedia; Ajay Thakore

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPHER MEDIA LLC, dba Doctor Multimedia, a Nevada Limited Liability Corporation, Ajay Thakore, an individual, | Case No. 21-cv-1909-RBM-VET |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES SUBMITTED IN SUPPORT OF PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIMANTS' THIRD AMENDED COUNTERCLAIMS AND STRIKE PORTIONS THEREOF [FRCP 12(B)(6); 12(F)]** |
| v. | |
| Andrew Melone, an individual; American Pizza Manufacturing, aka American Pizza Mfg, A California business entity; Does 1-10, | **DATE:  MARCH 15, 2024**<br>**JUDGE**:  Ruth Bermudez Montenegro<br>**CTRM:**  5B |
| Defendants. | |
| Andrew Melone, an individual; American Pizza Manufacturing, aka American Pizza Mfg., a California business entity, | Edward J. Schwartz<br>United States Courthouse<br>221 West Broadway<br>San Diego, CA 92101 |
| Cross-Complainants, | |
| v. | |
| Gopher Media LLC (formerly known as Local Clicks), dba Doctor Multimedia, a Nevada Limited Liability Corporation, Ajay Thakore, an individual; Roes 1-10, | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT.** |
| Counter-Defendants. | |

.

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………....1-2

II.   SUMMARY OF APPLICABLE LAW……………………………………...2-4

      A.  Rule 8 Pleading Requirements…………………………………...…………..2-3

      B.  Rule 12(b)(6) Pleading Standards………………………………3-4

III.  ARGUMENT…………………………………………………………4-25

      A.  Trade Libel……………………………………………………4-16

            1.   The Claim Fails As to Melone……………………………………4-6

            2.   No Specific Special Damages Are Alleged……………………………6-10

            3.   Defendants Do Not Allege A False Statement of Fact……………...…10-15

            4.   The Alleged Stataements Are Not Actionable……………………………16

      B.  Defamation Claims Fails……………………………………16-22

            1.   The Statute of Limitations Has Run On This New Claim………...…16-17

            2.   The Defamation Claim Fails………………………………………17-22

      C.  The Unfair Competition Claim Fails……………………………………22-23

      D.  The Declaratory Relief claim Fails……………………………………...…23-25

IV.   CONCLUSION………………………………………………………25

i

# TABLE OF AUTHORITIES

## CASES

*Aaron v. Aguirre*, 2007 WL 959083, at *16 (S.D. Cal. Mar. 8, 2007)……………………………2

*Admiral Ins. v. Niagara Transformer Corp.,* 57 F.4th 85, 96 (2d Cir.2023)……………………23

*Aetna Casualty & Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988)………15

*Albertson's, Inc. v. Young*(2003)107 Cal. App. 4th 106, 122……………………………………12

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S. Ct. 1612 (1975)…….10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…...………………………………….......2, 3

*Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977)…………………24

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)……………………………………………………………………………………..3

*Amarte USA Holdings, Inc. v. G.L.E.D Cosms. US Ltd.*, 2020 WL 10322586, at *2–3 (S.D. Cal. Dec. 15, 2020)………………………………………………………………………………4

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)…………………………..3

*Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1342 (2009)……………………11

*Bank v. Rogers*, 206 Cal. App. 4th 669, 700 (2012)……………………………………………...15

*Baral v. Schnitt*, 1 Cal. 5th 376 (2016)…………………………………………………………...14

*Barns-Hind, Inc. v. Sup. Ct.*, 181 Cal. App. 3d 377, 381 (1986)………………………………14, 16

*Bari v. Held*, U.S. Dist. LEXIS 13634, 37(1992)………………………………………………...18

*Bayer v. Neiman Marcus Grp., Inc.,* 861 F.3d 853, 868 (9th Cir. 2017)………………………...25

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.* (N.D. Cal. March 8, 2010) 2010 W.L. 890048 at p. 5……………………………………………………………………………………23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………………………2, 3

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,* 727 F.3d 917, 926–27 (9th Cir. 2013)……………………………………………………………………………4

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986)…………………………………………...5

*Bradley v. Hartford Acc. & Indem. Co.*, 30 Cal. App. 3d 818, 825(1973)………………………18

*Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 n.17 (1993)………………………………23

*City of Royal Oak Retirement System*, 2013 WL 2156358, at *7…………………………………7

*Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13-4539 RSWL MANX, 2013 WL 5405706, at *4 (C.D. Cal. Sept. 24, 2013)………………………………………………………………………..7

*ComputerXpress v. Jackson*, 93 Cal.App.4th 993,1005-1011,1013(2001)…………..6, 10, 12 , 15

Copp v. Paxton, 45 Cal, App. 4th 829, 837 (1996)…………………………………………11

*D 'Alessio Inv.*, 214 Cal. App. 4th at 377…………………………………………………………4

*DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001)…………………….7

*Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011)…………………………………………..2

*Dillon v. NBC Universal Media, LLC* (C.D. Cal. June 18, 2013) 2013 W.L. 3581938 at 7…….22

*Doe v. Camp Pendleton & Quantico Hous. Ltd. Liab. Co.*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020)……………………………………………………………………………………..2

*Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1283(1999)…………………17

*Ellenberger v. Espinosa*, 30 Cal. App. 4th 943, 951(1994)……………………………………...18

*Erlich*, 224 Cal.App. 2d at 73…………………………………………………………………..8, 9

*Erlich v. Etner*, 224 Cal. App. 2d 69, 73-74 (1964)………………………………………………9

*Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019)…………………2

*Fashion Valley Mall, LLC v. National Labor Relations Board* (2007) 42 Cal. 4th 850………………………………………………………………………………………………..12

*Flores v. EMC Mortg. Co.*, 997 F.Supp.2d 1088, 1111 (E.D. Cal. 2014)………………………24

*Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401-4 (1999)………………………………11, 14, 20

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)…………………..7

*Fletcher v. San Jose Mercury News*, 216 Cal. App. 3d 172, 191 (1989)………………………...12

*Franklin v. Dynamic Details, Inc*., 116 Cal. App. 4th 375,385-236, 387, 389 (2004)…..11, 14, 21

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, No. SACV1500789CJCDFMX, 2015 WL 12696203, at *4 (C.D. Cal. Sept. 15, 2015)……………………………………………………….6

*Gantry Constr. Co. v. American Pipe & Constr. Co.,* 49 Cal.App.3d 186, 196-197(1975)……...18

*Gertz v. Robert Welch, Inc.*,  418 U.S. 323, 339, 346-47(1974)………………………………….19

*Global Telemedia International, Inc. v. Doe,* 132 F.Supp.2d 1261, 1264 (C.D.Cal.2001)……....15

1    *Good Government Group of Seal Beach, Inc. v. Superior Court*, 22 Cal.3d 672, 680(1978)…....17

2    *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997)………………………………………17

3    *Greenbelt Pub. Assn. v. Bresler* 398 U.S. 6, 13-14, 90 S.Ct. 1537(1970)…………………...17, 21

4    *Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 600, 601(1976)……………………19, 21

5    *Guess, Inc. v. Sup. Ct.*, 176 Cal. App. 3d 473, 479 (1986)……………………………4, 5, 9, 15

6    *Hartford Cas. Ins. Co. v. Swift Distrib.*, Inc., 59 Cal. 4th 277, 291, 294 (2014)………………..16

7    *Hofmann Co. v. E.I. Du Pont de Nemours & Co.*,202 C.A.3d 390, 397(1988)………………6, 10

8    *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954, 2014 WL

9    6892141, at *4 (C.D. Cal. Nov. 5, 2014)……………………………………………………………8

10   *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41(1988)…………...17

11   *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784

12   (9th Cir. 1980)…………………………………………………………………………………21

13   *Ingalls v. AMG Demolition & Envtl. Servs.,* 2018 WL 2086155, at *3 (S.D. Cal. May 4, 2018)...2

14   *J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal.App.4th 87, 97 (2016)……...4, 9

15   *James v. San Jose Mercury News, Inc.*, (1993) 17 Cal.App.4th 1, 12 (1993)……………………20

16   *Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011)…………………………………………...23, 24

17   *Kahn v. Bowers* 232 Cal. App. 3d 1599, 1612, n. 5(1991)………………………………………18

18   *Khawar v. Globe Int'l, Inc.*19 Cal.4th 254,273-74(1998)………………………………………19

19   *Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1219 (S.D. Cal. 2012)………………..24

20   *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *3

21   (N.D. Cal. Dec. 13, 2012)………..……………………………………………………………8

22   *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159, 1162(2008)…………………………...11, 19, 20

23   *Kunz v. People of State of New York*, 340 U.S. 290, 315 (1951)……………………………...12

24   *Leonardini v. Shell Oil Co.*,216 C.A.3d 547, 572 (1989)……………………………………4

25   *Letter Carriers v. Austin*, 418 U.S. 264, 284, 286, 94 S.Ct. 2770(1974)………………………..17

26   *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 135…………22

27   *Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal.2d 224, 233, 235 (1961)………………..17, 18

28   *Lopez v. Wells Fargo Bank, N.A.*, 2017 WL 1336764, at *3 (S.D. Cal. Apr. 5, 2017)…………..2

iv

*Los Angeles Police Protective League v. City of Los Angeles*, 27 Cal.App.4th 168(1994)……...17

*Lundquist v. Reusser*, 7 Cal.4th 1193, 1194(1994)……………………………………………18

*MacLeod v. Tribune Publ'g Co., Inc.*, 52 Cal. 2d 536, 546 (1959)………………………………6

*Melaleuca v. Clark*, 66 C.A.4th 1344 § 173(1998)……………………………………………6

*Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 104, 109(2004)………….……9, 14

*Mann v. Quality Old Time Service, Inc.,* 139 Cal.App.4th 328, 335-336(2006)………………8, 9

*Martin v. Bank of America*, No. 2:15-cv-0372-GMN-PAL, 2016 WL 70456, at *3 (D. Nev. Jan. 6, 2016)……………………………………………………………………………………24

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1161 (C.D. Cal. 1998)………………21

*McGarry v. University of San Diego*, 154 Cal.App.4th 97, 113 (2007)…………………………19

*Mendia v. Garcia*, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016)…………………………………25

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20(1990)………………………………………21

*Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 687-694(1994)……………11, 20, 22

*Muddy Waters, LLC v. Superior Court*, 62 Cal. App.5th 905, 926(2021)……………………...8, 9

*N. Highlands I, II, LLC v. Comerica Bank,* 328 F. App'x 358, 360 (9th Cir. 2009)……..………3

*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)…………………………3

*Nichols v. Great Amer. Ins. Cos.* 169 C.A.3d 766, 773,774(1985)………………………..4, 9, 12

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999)…………………………...11, 21

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004)………………………..7

*Noral v. Hearst Publ'n*, 40 Cal. App. 2d 348, 353 (1940)………………………………………6

*NPK Indus. v. Hunter*, No. 15-cv-811, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015)…7, 8

*Okun v. Superior Court*, 29 Cal.3d 442, 458(1981)………………………………………....18

*Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419–20, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971)………………………………………………………………………………………25

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,*413 U.S. 376, 390, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973)…………………………………………………………………25

*Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 549(1985)……………………4

*Prime Healthcare Servs., Inc. v. Harris,* 216 F. Supp. 3d 1096, 1111 (S.D. Cal. 2016)…………4

*Pruneyard Shopping Ctr. v. Robins* (1980) 447 U.S. 74)………………………………………..12

*Rigel Pharms.*, No. C 09-00546 JSW, 2010 WL 8816155, at *1 n. 1 (N.D. Cal. Aug. 24, 2010)..7

*Robins v. Pruneyard Shopping Center* (1979) 23 Cal. 3d 899…………………………………12

*Rosenaur v. Scherer*, 88 Cal.App.4th 260,278- 279 (2001)…………………………………..21

*Ruiz v. Harbor View Cmty Ass'n*, 134 Cal.App.4th 1456, 1473 (2005)…………………………21

*Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.* (E.D. Cal. 2013) 965 F.Supp.2d

1141, 1154…………………………………………………………………………………..22

*Seelig v. Infinity Broad. Corp.,* 97 Cal. App. 4th 798,809, 810-811 (2002)…………11, 14, 15, 21

*Shively v. Bozanich*, 31 Cal. 4th 1230, 1246-1247(2003) as modified, (Dec. 22, 2003)………...16

*Shores v. Chip Steak Co.* (1955) 130 Cal.App.2d 627, 630)……………………………………4, 15

*Silberg v. Anderson*, 50 Cal. 3d 205(1990)……………………………………………………18

*Spencer v. Kemna*, 523 U.S. 1, 18, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)……………………...24

*Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999)………………………………………17

*Stuart v. Cadbury Adams USA, LLC*, No. CV 09-6295 AHM (CWX), 2010 WL 1407303,

at *4 (C.D. Cal. 2010) aff'd, 458 F. App'x 689 (9th Cir. 2011)………………………………….7

*Summit Bank v. Rogers*, 206 Cal.App.4th669 (2012)…………………………………………19

*Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)…………………………………….24

*Telemedia Internat., Inc. v. John Doe 1*, 132 F.Supp.2d 1261, 1267 (C.D.Cal. 2001)………….19

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)……………………………3

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,482 F.3d 1330, 1338)……………………..23

*Trinh v. Homan*, 466 F.Supp.3d 1077, 1094 (2020)…………………………………………..25

*Tschirky v. Superior Court*, 124 Cal.App.3d 534, 539 (1981)………………………………...19

*Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676………………………………….2, 3

*United Mine Workers of America Intern. Union v. G.M. & W. Coal Co.*, 642 F. Supp. 57

(W.D. Pa. 1985)…………………………………………………………………………….24

*United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986)………………..2

*Vogel v. Felice*, 127 Cal. App. 4th 1006, 1017(2005)………………………………………...18

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 899 (2004)………………………………………...20

*Williams v. Beechnut Nutrition Corp.* 185 Cal.App.3d 135, 139, fn.2. (1986)......................18

*Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008)..................3

*Yang Chanthavong v. Aurora Loan Services, Inc.*, 448 B.R. 789, 803 (E.D. Cal. 2011)...........24

*Yuan v. Facebook, Inc.*, 2021 WL 4503105, at*2-3 (N.D. Cal. 2021)............................7, 8

**<u>STATUTES</u>**

**<u>U.S.C.A.</u>**

28 U.S.C.A. § 2201(a)..............................................................................................23

**<u>Federal Rule sof Civil Procedure</u>**

Federal Rule of Civil Procedure 9(g)..........................................................................7

Federal Rule of Civil Procedure 10(c).........................................................................7

Federal Rule of Civil Procedure 12(b)(6)......................................................................3

**<u>CALIFORNIA STATUTES</u>**

**<u>California Civil Code:</u>**

Cal. Civil Code § 44, 45, 46...................................................................................17

Cal. Civil Code § 47(c)..........................................................................................18

**<u>California Code of Civil Procedure :</u>**

Cal. Code Civ. Proc. § 340 (c)...............................................................................16

Cal. Code Civ. Proc. § 430.10 subd. (f).....................................................................18

Cal. Code Civ. Proc. § 1021...................................................................................10

**<u>OTHER</u>**

**<u>Witkin, Summary:</u>**

5 Witkin, Summary 10th Torts § 645 (2005).................................................................9

**<u>Rest.2d, Torts</u>**

Rest.2d, Torts § 626...............................................................................................4

**<u>California Jury Instructions :</u>**

BAJI 7.15..............................................................................................................4

CACI No. 1731.......................................................................................................9

## I.    INTRODUCTION

Plaintiffs and Counter-Defendants Gopher Media LLC, dba Doctor Multimedia ("DMM") and Ajay Thakore ("Thakore") (collectively "Plaintiffs") hereby move to dismiss the third amended counterclaims (ECF No. 72)("TACC") of Defendants Andrew Melone ("Melone") and AGFM FAMILY ENTERPRISES, LLC, dba American Pizza Manufacturing ("APM") (collectively "Defendants").

Frankly, Defendants should be sanctioned per FRCP 11 for making false allegations they know are untrue and have no basis, such as the vandalism allegations.  At no time has Thakore or anyone affiliated with DMM been charged, arrested, or convicted of any acts of vandalism against APM.   Indeed, Melone told the police had did not know who had committed any of the alleged acts of vandalism. (Exhibits 3-7). There are no videos, no photos, no witnesses, nothing to support these claims.  Defendants know this but assert the claim anyway despite their Rule 11 obligations.  Melone admitted under oath in his deposition that there is no evidence that Thakore or DMM was involved in these acts of vandalism and that the APM location has many been the target of vandalism before APM even opened. (Exhibit 2, Depo. Melone Page 93, Line 24; Page 94, Lines 2-25; Page 95, Lines 1-22).  Indeed, in March of 2020, months before Defendants claim the alleged harassment by Plaintiffs began(TACC¶9) or a year before this lawsuit was filed, APM was vandalized as Melone reported to the police. (Exhibit 3). The claims about the timing of the vandalism in the TACC are disingenuous to say the least.

The same is true of the supposed damages of Defendants.  It simply is not plausible to assert Defendants suffered damage to APM's business in light of the true facts which are indisputable. APM's Google rating, as Melone has admitted, of APM *is 4.9 stars out of 5* (5 being the highest rating possible) and has been for over a year. Further, APM has received multiple community accolades and/or awards for its business since the alleged online reviews were posted and/or alleged conduct occurred.  (Exhibit 2, Depo Melone, Page 228, Lines 13-28; Page 229, Lines 1-6, 11-13; Page 230, Lines 23-25; Page 231, Lines 1-22; Exhibits 9-10, 13-15).  Melone also admitted that he has no chronological summary to show what the Google rating was for APM at any given time since the online reviews were posted. .(Exhibit 2, Depo Melone, Page 231, Lines 21-22). Moreover, the alleged postings were only online a few weeks at most.  The allegations on damages are a sham and untrue in light of Melone's own testimony. (Exhibit 2).

Further, most, if not all the alleged defamatory or libelous statements are at most inactionable subjective opinions (such as one-star ratings), rhetoric, or hyperbole as Melone himself has admitted (Exhibit 2) and/or cannot be linked in any way to Plaintiffs.  Plaintiffs have attached a list (Exhibit 1) of all the so-called statements and ask the Court to rule as a matter of law that none of them are actionable.  It is also very crucial to note for this motion (and it is undisputed) that, as Melone admitd, APM sells a certain type of pizza, "take-n-bake pizza" (which is unbaked pizza that customers pick up unbaked and take home to cook). (Exhibit 2).  ***The name of APM is not "take-n-bake pizza"*** and nothing in APM's name suggests otherwise.

## II.    SUMMARY OF APPLICABLE LAW

### A.    Rule 8 Pleading Requirements

"Rule 8 requires allegations in a complaint to be specific enough to place the opposing party on notice so that they can defend themselves. Lumping multiple defendants with broad allegations does not provide such notice and is prohibited." (*Doe v. Camp Pendleton & Quantico Hous. Ltd. Liab. Co.*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020); *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (affirming finding that lump pleading "failed to comply…with Rule 8(a)(2)'s 'short and plain statement requirement'"); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) (complaint did not meet Rule 8 pleading standards where plaintiff failed to differentiate the alleged wrongs amongst defendants); *Ingalls v. AMG Demolition & Envtl. Servs.,* 2018 WL 2086155, at *3 (S.D. Cal. May 4, 2018) (dismissing claim that failed under Rule 8 to adequately notify defendants of the harms defendants allegedly committed); *Lopez v. Wells Fargo Bank, N.A.*, 2017 WL 1336764, at *3 (S.D. Cal. Apr. 5, 2017); *Aaron v. Aguirre*, 2007 WL 959083, at *16 (S.D. Cal. Mar. 8, 2007).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claimant must, as a matter of pleading, allege "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Iqbal*, 556 U.S. at 678).

The Court need not assume the truth of legal conclusions cast in the form of factual allegations. (*United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2

1   (9th Cir. 1986). A pleading is insufficient if it offers mere "labels and conclusions"

2   or "a formulaic recitation of the elements of a cause of action." (*Twombly*, 550 U.S.

3   at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a

4   cause of action, supported by mere conclusory statements, do not suffice.")). It is

5   inappropriate to assume that the claimant "can prove facts which it has not alleged

6   or that the defendants have violated the . . . laws in ways that have not been

7   alleged." (*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B.    Rule 12(b)(6) Pleading Standard

8       A Rule 12(b)(6) motion tests the legal sufficiency of a complaint or, as here, a

9   counterclaim.( *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

10  1983). A counterclaim is insufficient and, as a result, should be dismissed where

11  there is a "lack of a cognizable legal theory or [an] absence of sufficient facts

12  alleged under a cognizable legal theory." (*Balistreri v. Pacifica Police Dep't*, 901

13  F.2d 696, 699 (9th Cir. 1990).   Dismissal is appropriate under Rule 12(b)(6) where

14  a pleader fails to state a claim upon which relief can be granted. (Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v.Twombly*, 550 U.S. 544, 555, (2007).

15      To survive a motion to dismiss, the complaint must contain sufficient facts

16  that make the claim "plausible on its face." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678

17  (2009). Plausibility requires "more than a sheer possibility that a defendant has

18  acted unlawfully" and that the claim rises "above the speculative level." (*Iqbal*, 556

19  U.S. at 678; *Twombly*, 550 U.S. at 555). In making this determination, courts

20  disregard all "threadbare recitals of the elements," "legal conclusions," and

21  "conclusory statements." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th

22  Cir. 2010). A pleading must give fair notice of a legally cognizable claim and the

23  grounds on which it rests. (*Twombly*, 550 U.S. at 555. "A court should grant a

24  motion to dismiss if plaintiffs have not pled 'enough facts to state a claim for relief

25  that is plausible on its face.'" (*Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

26      In assessing a motion to dismiss, the Court need only "assume the truth of

27  well-pleaded factual allegations," "but need not assume the truth of opinions, factual

28  and legal conclusions or arguments." (*N. Highlands I, II, LLC v. Comerica Bank*, 328 F. App'x 358, 360 (9th Cir. 2009*). Only after eliminating from considerations

such insufficient allegations, should the Court consider whether what remains "plausibly give[s] rise to an entitlement to relief."(*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Allegations that are "made upon information and belief" "are conclusory" and "insufficient under *Twombly* and *Iqbal*."(*Prime Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096, 1111 (S.D. Cal. 2016)*; Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,* 727 F.3d 917, 926–27 (9th Cir. 2013); *Amarte USA Holdings, Inc. v. G.L.E.D Cosms. US Ltd*., 2020 WL 10322586, at *2–3 (S.D. Cal. Dec. 15, 2020).

## III.    ARGUMENT

### A.    Trade Libel

*A trade libel is an intentional disparagement of the quality of property that results in pecuniary damage.* (emphasis added) (Rest.2d, Torts § 626; *see Nichols v. Great Amer. Ins. Cos.* 169 C.A.3d 766, 773(1985); *Leonardini v. Shell Oil Co.*,216 C.A.3d 547, 572 (1989). "To constitute trade libel the statement must be made with actual malice, that is, with knowledge it was false or with reckless disregard for whether it was true or false." (*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal.App.4th 87, 97 (2016). ***"The distinction between libel and trade libel is that the former concerns the person or reputation of plaintiff and the latter relates to his goods***." (*Shores v. Chip Steak Co.* (1955) 130 Cal.App.2d 627, 630). The burden is on the party asserting trade libel to prove a false, disparaging statement was made. (*D 'Alessio Inv.*, 214 Cal. App. 4th at 377). Despite its name, " 'trade libel' is not true libel and is not actionable as defamation." (*Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 549(1985).

#### 1.    The Claim Fails As to Melone

Trade libel "is not directed at the plaintiffs personal reputation but rather ***at the goods a plaintiff sells or the character of his or her business***. (*Guess, Inc. v. Sup. Ct.*, 176 Cal. App. 3d 473, 479 (1986)) (emphasis added). For purposes of trade libel, an injurious statement is a statement of fact or facts that ***<u>disparages another person's interest in land, personal property, intangible things, or of their quality</u>***. (BAJI 7.15). An action for defamation protects the personal reputation of the individual injured party, while an action for trade libel, like an action for slander of title, protects the injured party's economic interests. (*Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543 (1985). Trade libel differs from defamation in that the plaintiff must prove and plead special damages in the form of pecuniary

loss; he or she must carry the burden of proving that the disparaging statement is false; and ***such personal elements of damage*** as mental distress have been strictly excluded from these claims.' " (emphasis added). (*Guess v. Superior Court* 176 C.A.3d 473, 479(1986)(*quoting Prosser in part*)).

Here, the claim necessarily fails as to Melone as an individual as to those statements allegedly made about him.  By definition, trade libel can only be asserted as to false, disparaging statements ***made about one's business or products, not as to oneself.***  It cannot be asserted as to any claims regarding an individual or his individual reputation.  Melone has sued in his capacity as an individual and as an owner of APM. (TACC ¶3).  He, as an individual, is not a business or a product that can assert a trade libel claim or claim that false statements were made about him as a product or as a business.  He is a person, not a product or a business.

While Melone may have standing as one owner of APM to assert trade libel as to alleged damages suffered by APM, he cannot, as this Court has already found, pursue damages or claims related to any alleged statements made about him or based on damage caused to his own personal, individual reputation.  Despite this finding,  the Defendants still base their trade libel claim on alleged personal reputation damage to Melone as an individual and alleged comments made about Melone rather than those allegedly disparaging APM.  They do this by incorporating the previous paragraphs in the TACC and by reference in the claim and basing the claim on such things as "[t]he owner laughed at me when….".  (TACC¶¶41-42).

Further, there are no alleged false statements about Melone which refer to him by his full name directly which are alleged or stated in the TACC.  At most is an alleged post by a third party (not sued in the counterclaims) that the "owner laughed at me when I said my name for the order…."  and an alleged statement that "he" (person unnamed, ***not identified as Melone in the TACC)*** called Thakore a racial slur (TACC ¶¶23, 42; Exhibit A to TACC).  Melone is not mentioned by name or his full name at any time in these alleged defamatory/trade libel statements if at all.

In trade libel cases, the First Amendment has been held specifically to require that the statement giving rise to the trade libel action be of and concerning the plaintiff (counterclaimant). (*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986) (holding in a suit by an author against a newspaper for erroneously deleting the author's book from the paper's bestseller list, dismissal was proper because the paper had made no statement of and concerning the plaintiff)).  No one would or could

know that either statement refers to Melone directly particularly as it is undisputed that there is more than one owner of APM. "If the publication does not in fact charge the plaintiff with the things set forth in the innuendo, and when fairly read it appears that the [Counterclaimant] is not so charged, ***its meaning cannot be extended by innuendo to make it constitute a libel against him***." (emphasis added). *Noral v. Hearst Publ'n*, 40 Cal. App. 2d 348, 353 (1940). Where a statement is not reasonably susceptible of a defamatory interpretation, as a matter of law it is not actionable. (*MacLeod v. Tribune Publ'g Co., Inc.*, 52 Cal. 2d 536, 546 (1959).

The only other alleged statement made by a third person who is not identified and has nothing to link that person to Plaintiffs, states an opinion which is not actionable and not defamatory or actionable as defamation or trade libel, "The owner Andrew is a real rude person." (Exhibit A, Page 1 to TACC). This statement is an opinion, rhetoric and hyperbole. It is not provable as a fact and thereby not actionable. To constitute trade libel a statement must be false. (*ComputerXpress v. Jackson*, 93 Cal.App.4th 993, 1010 (2001). ***Because mere opinions cannot by definition be false statements of fact, opinions alone will not support a cause of action for trade libel or defamation.*** (emphasis added). (*Hofmann Co. v. E.I. Du Pont de Nemours & Co.*,202 C.A.3d 390, 397(1988); *see Melaleuca v. Clark*, 66 C.A.4th 1344 § 173(1998).

Lastly, there are no specified allegations as to what special damages Melone, *as an individual based on alleged statements about him that he allegedly suffered*. While APM may have suffered damage for trade libel (which is disputed), specific pecuniary damage as to Melone as an individual is not alleged anywhere in the TACC. There is nothing close to that alleged in the TACC as to Melone as an individual in the TACC. Indeed, all that is referenced are alleged damages to APM's business ***but none as to Melone as an individual***. (TACC ¶¶44,48-56). And, indeed, this would be preposterous. Trade libel damages are pecuniary damages caused to one's business, not individual damage to one's reputation caused to individuals like Melone. The claim fails as a matter of law as such as to Melone.

### 2. No Specific Special Damages Are Alleged

"[M]ost courts apply some sort of heightened pleading standard to trade libel claims[.]" *G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, No. SACV1500789CJCDFMX, 2015 WL 12696203, at *4 (C.D. Cal. Sept. 15, 2015) (collecting cases)). "At a minimum, necessary defamation allegations must identify

the time and place of publication as well as the speaker, the recipient of the statement, the substance of the statements, and, in the case of trade libel, special damages." (*Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13-4539 RSWL MANX, 2013 WL 5405706, at *4 (C.D. Cal. Sept. 24, 2013)). As noted, Defendants are required to pled with specificity all special damages they allegedly suffered. (*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004;*NPK Indus. v. Hunter*, No. 15-cv-811, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015). Federal Rule of Civil Procedure 9(g) explicitly requires that "[i]f an item of special damage is claimed, it must be specifically stated." It is black letter law that "a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss." (*NPK Indus. v. Hunter*, No. 15-cv-811, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015) (citation omitted).

Here, the TACC still does not meet the demanding standard for trade libel and fails to plead with specificity all the elements of such a claim claims.  The alleged expert reports attached do not help the claim.  The expert reports are improperly attached to the TACC, should not be considered when ruling on this motion, and should be stricken. (*See, Yuan v. Facebook, Inc.*, 2021 WL 4503105, at*2-3 (N.D. Cal. 2021) (finding expert affidavit was improperly attached to a complaint; striking the expert affidavit attached to the complaint for purposes of addressing pleading deficiencies in previous complaint); *see also Stuart v. Cadbury Adams USA, LLC*, No. CV 09-6295 AHM (CWX), 2010 WL 1407303, at *4 (C.D. Cal. 2010), aff'd, 458 F. App'x 689 (9th Cir. 2011) (striking an expert report that "was generated for the purposes of this litigation" because such a report could not qualify as a written instrument under Fed.Civ. Proc. Rule 10(c)).  Defendants cannot bypass dismissal or early judgment simply by incorporating dozens of pages of expert reports as allegations. (*Id.*).

Although Federal Rule of Civil Procedure 10(c)permits the Court to treat a "written instrument that is an exhibit to a pleading" as part of the pleading for all purposes, an expert report such as what Defendants attach as exhibits to the TACC does not qualify as a "written instrument." (*In re Rigel Pharms.*, No. C 09-00546 JSW, 2010 WL 8816155, at *1 n. 1 (N.D. Cal. Aug. 24, 2010)(*citing DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001).  The expert reports attached to the TACC (Exhibits B-D to TACC) do not contain any new facts or evidence, but rather they consist of paid expert opinions and legal conclusions only.

Such opinions "cannot substitute for facts" in the TACC. (*City of Royal Oak Retirement System*, 2013 WL 2156358, at *7(*quoting Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)); *see also Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (striking from the complaint "conclusory assertions" from an expert report)).

Therefore, in deciding this motion to dismiss, Plaintiffs also object to any consideration of the expert reports (Exhibits B-D to TACC) or any other portions of the TACC that rely on those opinions by the Court to include those regarding alleged special damages. (*See, Yuan v. Facebook, Inc.*, 2021 WL 4503105, at*2-3 (N.D. Cal. 2021) (making a similar order and declining to consider expert affidavit attached to complaint when ruling on motion to dismiss). It is also requested the Court strike exhibits B-D from the TACC.

Further, even with the expert reports, Defendants do not refer to any specific contract or customer lost as a result of the supposedly libelous statements. (*See, Muddy Waters, LLC v. Superior Court*, 62 Cal. App.5th 905, 926(2021) (plaintiff's failure to identify any customer or entity that refrained from dealing with plaintiff as result of reliance on reports by defendant, accusing plaintiff of being complicit in illegal import scheme, was fatal to trade libel claim)). To establish this element, " ' is not enough to show a general decline in [plaintiff's] business resulting from the falsehood, even where no other cause for it is apparent, ... it is only the loss of *specific sales* that can be recovered. This means, in the usual case, **that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived**.' " (emphasis added)(*Erlich*, 224 Cal.App. 2d at 73; *see Mann v. Quality Old Time Service, Inc.,* 139 Cal.App.4th 328, 335-336(2006).Merely stating a particular dollar amount that will be sought in damages is not sufficient either. (*See, Id.*).

*Similarly, "general statements of economic loss," such as "lost sales, disruption of business relationships, loss of market share and of customer goodwill,*" "do not sufficiently identify special damages," even when the prayer for relief seeks a specific dollar amount. (*Homeland Housewares, LLC v. Euro-Pro Operating LL*C, No. CV 14-03954, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014). Instead, the party making such a claim must allege **_specific pecuniary losses_** that are plausibly "attributable to the [allegedly] libelous statements as a whole." (*Id.*). (emphasis added). **To adequately allege special damages, a plaintiff "must**

**'identify particular customers and transactions of which it was deprived as a result of the libel.' "** (*NPK Indus.*, 2015 WL 5461667, at *4 (citation omitted). (emphasis added). (*See also*, *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 926(2021). To establish this element, " ' is not enough to show a general decline in [plaintiff's] business resulting from the falsehood, even where no other cause for it is apparent, ... it is only the loss of **specific** sales that can be recovered. This means, in the usual case, **that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived**.' " (*Erlich*, 224 Cal.App. 2d at 73; *see Mann v. Quality Old Time Service, Inc.,* 139 Cal.App.4th 328, 335-336(2006). Unlike a claim for defamation, trade libel requires as an essential element that the plaintiff plead and prove it suffered direct financial harm because someone else acted in reliance on the defendant's statement. (*Id.*; CACI No. 1731).

Here, the existence of a specific customer or business entity that refrained from dealing with Defendants as a result of the alleged trade libel is essential factual element of Defendants' claim which must be pled with specificity. Defendants' trade libel claim fails because Defendants have not adequately alleged that they incurred special damages or alleged specifically what those special damages are, as they must do to plead a claim for trade libel. (TACC ¶¶40-56). There is no presumption of damages for this claim. (*Erlich v. Etner*, 224 Cal. App. 2d 69, 73-74 (1964); *see also, Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 773 (1985) (trade libel requires showing of special damages); *Guess, Inc.*, 176 Cal. App. 3d at 479); *J-MManuf Co.*, 247 Cal. App. 4th at 97; 5 Witkin, Summary 10th Torts § 645 (2005) ("[t]rade libel differs from defamation in that the plaintiff 'must prove special damages in the form of pecuniary loss' ")). *The plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived.' "* (*Erlich*, 224 Cal.App. 2d at 73–74).

Here, Defendants merely assert that they have suffered generalized damages to the business but fail to point to any specific customer or contract they lost. (TACC ¶44-49; Exhibits B-D to TACC). But this is not a general claim for defamation and special damages must be pled and proven in order to sustain a claim for trade libel. *Defendants failure to plead "particular customers and transactions of which [they were] deprived as a result of the libel"* (emphasis added).(*Mann*,

120 Cal. App. 4th at 109) is fatal to their claim.  Also, their claim of lost business is not credible in light of all the accolades they have received during the relevant time period noted above and their current very high Google rating.  Defendants also forget about the impact of COVID-19 on all businesses during the time period they claim their business supposedly suffered damage because of negative reviews which they admit were removed two weeks after being posted.

Further, part of the damages they allege are not trade libel damages, such as attorney fees to litigate this case, "increased insurance premiums," and alleged "vandalism" damages.  (TACC ¶¶44-48). These are not damages that in any way could or are related to any alleged trade libel.  Also, a fundamental legal tenet, referred to as the American Rule, generally precludes an award of attorney's fees absent statutory authorization or an enforceable contractual fees provision. (*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S. Ct. 1612 (1975). Most states, including California, also follow the American Rule. (See Cal. Code Civ. Proc. Code § 1021). Thus, Defendants cannot recover attorney's fees based on the trade libel claim whether as a form of pecuniary damages or even as a form of costs (even if they prevailed on the tort claim of trade libel).

### 3.    Defendants Do Not Allege A False Statement of Fact

To constitute trade libel, a statement must be false statements of fact. (*ComputerXpress v. Jackson*, 93 Cal.App.4th 993, 1010 (2001).  Because mere opinions cannot by definition be false statements of fact, opinions alone will not support a cause of action for trade libel. (*Hofmann Co. v. E.I. Du Pont de Nemours & Co.*,202 C.A.3d 390, 397(1988).  "Because the gravamen of the complaint is the allegation that respondents made false statements of fact that injured appellant's business, the 'limitations that define the First Amendment's zone of protection' are applicable. '[It] is immaterial for First Amendment purposes whether the statement in question relates to the plaintiff himself or merely to his property. . . .' " (*Hofmann Co.*,202 Cal.App.3d at 397).

"If respondents' statements about appellant are opinions, the cause of action for trade libel must of course fail. 'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.' Statements of fact can be true or false, but an opinion—'a view, judgment, or appraisal formed in

1   the mind. . . [a] belief stronger than impression and less strong than positive

2   knowledge'—is the result of a mental process and not capable of proof in terms of

3   truth or falsity." (*Hofmann Co.*, 202 Cal.App.3d at 397).

4          California and Ninth Circuit cases have routinely afforded constitutional

    protection for rhetorical hyperbole, vigorous epithets, lusty and imaginative

5   expressions of contempt, caricature, opinion, parody, imaginative expression, and

6   language used in a loose, figurative sense. (*See, e.g., Nicosia v. De Rooy*, 72 F.

7   Supp. 2d 1093, 1104 (N.D. Cal. 1999) (in context, defendant's online statements that

8   plaintiff was a "fraud," "criminal," had acted illegally, had committed perjury, was

    dishonest, was "manipulative," and carried on "exploitative business relationships"

9   were hyperbole and not defamatory); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394,

10  1401-4 (1999)(affirming the sustaining of demurrer without leave to amend and

11  finding statements such as "Kmart Johnnie Cochran," "creepazoid, and "loser

12  wannabe lawyer," while name-calling, were not actionable and not to be taken

13  literally); *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 687 (1994)

    (holding failure to state a cause of action where article titled "Lies, Damn Lies, and

14  Fund Advertisements" was protected imaginative expression or rhetorical

15  hyperbole); *Seelig v. Infinity Broad. Corp.,* 97 Cal. App. 4th 798, 811 (2002)

16  (finding anti-SLAPP motion should have been granted where terms like "local

17  loser" and "big skank" were not actionable as no reasonable listener would take

18  them as factual pronouncements); *Balzaga v. Fox News Network, LLC*, 173 Cal.

    App. 4th 1325, 1342 (2009) (concluding insufficient basis for a factfinder to

19  conclude that "Manhunt at the Border" caption, when viewed in context, was

20  actionable); *Franklin v. Dynamic Details, Inc*., 116 Cal. App. 4th 375, 389 (2004)

21  (statements that an individual "stole" copyrighted material, "compromised" DDi,

22  and "plagiarized" data were rhetorical hyperbole in context); *Krinsky v. Doe 6*, 159

    Cal. App. 4th 1154, 1159 (2008) (finding "crooks" and "fake medical degree" non-

23  actionable opinions)).

24         Here, all of the alleged statements are protected by the First Amendment.

25  They are non-actionable rhetoric, opinion, and hyperbole made in the context of

26  informal online banter, as fair comment, and/or in the exercise in the First

27  Amendment right to comment, review, protest or boycott Defendants' business

    and/or business practices.  All of the alleged statements are the type of "broad,

28  unfocused and wholly subjective comment" courts typically regard as opinion. (*See*,

Copp v. Paxton, 45 Cal, App. 4th 829, 837 (1996), *quoting Fletcher v. San Jose Mercury News*, 216 Cal. App. 3d 172, 191 (1989)). None of these alleged statements are capable of being proven false or true, nor do they imply a factual assertion that can be proven false or true. Further, Thakore had and has the right to allegedly protest in and around APM. By law, the area outside of APM to include the sidewalk and the Parking Sport are public spaces open to the public. (*See. e.g., Fashion Valley Mall, LLC v. National Labor Relations Board* (2007) 42 Cal. 4th 850; *Robins v. Pruneyard Shopping Center* (1979) 23 Cal. 3d 899; *Albertson's, Inc. v. Young* (2003) 107 Cal. App. 4th 106, 122; *Pruneyard Shopping Ctr. v. Robins* (1980) 447 U.S. 74). Public streets are held in trust for use by the public to include for free speech purposes. (*Kunz v. People of State of New York*, 340 U.S. 290, 315 (1951).   With the above in mind, this claim fails as to all the Defendants.  Most if not all the statements alleged in the TACC to be trade libel, are mere opinions, advertisements (or commercial speech) and/or hyperbole, but nothing more. Exhibit B filed herewith lists all the alleged statements at issue.  Most have no words but rather are simply one star ratings of APM which are undoubtedly opinions and cannot be said to be false or defamatory.  Moreover, Plaintiffs and the Court are left to guess which statements are supposed to be actionable and which are not.  Where a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the Counterclaimant to plead the facts showing its defamatory meaning. (*Nichols v. Great American Ins. Companies*, 169 Cal.App.3d 766, 774(1985).

   Similar to the plaintiff in *ComputerXpress*, Defendants have failed to demonstrate how the alleged Internet postings, on which this cause of action is based, were false or defamatory. (*Computer XPress*, 93 Cal. App. 4th at 1005-1011). In fact,  just as in *ComputerXpres,*  Defendants have not even identified which of the numerous postings included in the TACC they contend are actionable or why.  (*Id.*). Instead, Defendants, as it *ComputerXpress* simply refer to the 44 pages of Internet postings, apparently assuming it is Plaintiffs and the Court's obligation to determine how they are actionable and support Defendants' position.  Such pleading fails to heightened pleading standards for a trade libel claim. (*Id.* ).

   The alleged trade libelous statements boil down to: 1) flying one or more airplane banners in La Jolla that concern a nearby business, Carino's restaurant (who Melone says is not a competitor) (Exhibit 2), and state at most that take-n-bake pizza (a type of pizza) is not good (with no mention of APM or Melone (TACC

¶20); 2) allegedly posting or having unknown (and unnamed third parties) post negative reviews online (TACC ¶11, Exhibit A to TACC; Exhibit 1); 3) posting a promotional ad for Carino's on Instagram offering to pay for customers if they say APM sucks and they order $100 worth of food (TACC ¶21); 4) posting an Instagram post offering people money to call "take n bake pizza" their opinion on it (with no mention of Melone or APM) (TACC ¶21); and/or 5) putting decals or post-its on a car that say that take-n-bake pizza sucks (but never referring to APM or Melone by name) (TACC ¶¶17-19).

The generalized statements in the airplane banner, on the post-it, and on the car none of which even refer to APM or Melone are not actionable.(*Computer XPress*, 93 Cal. App. 4th at 1005-1011).  ***People have the right not to like the type of pizza APM sells and to say so whether by airplane banner ad, via post-it note, or by vague decals on a car.***  as Melone admits (Exhibit 2).  None of these alleged libelous statements are actionable.  The flying airplane ads do not even refer to APM or Melone whatsoever as Melone admits (Exhibit 2).  They instead appear to be ads for a rival pizza business, Carino's.  Stating that "Carino's is Better Than Take-N-Bake Pizza"  or "Just Say No To Take-N-Bake Pizza" or "Carino's Take It Baked" are in any way libelous to APM or Melone. (TACC ¶20). None of these statements refer to APM or Melone or even disparage either one. Rather, this is simply stating the opinions, rhetoric, or hyberbole that *the type of pizza or food* Carino's sells is better than the type of food called "take-n-bake pizza."

Similarly, displaying decals on a car saying that ***the type of pizza*** sold by APM (take-n-bake pizza) "sucks" is not defamatory and, again no direct reference is made to APM or Melone. (TACC ¶¶17-19).  Rather, the car decals simply stated the type of pizza APM sucks which is an opinion, not an actionable libelous statement. (TACC ¶¶17-19).  Members of the public may and surely do believe that the type of pizza known as "take-n-bake pizza" suck, just as some may believe that Impossible Burgers (a type of burger) or turkey burgers (a type of burger) suck.  They are entitled to that opinion and to express it as well.  Certainly, such statements are mere opinions protected by the First Amendment which are not actionable.

The alleged decals on the car never mentioned APM or Melone, but rather only generally stated *the opinions* about *the type of pizza* served at APM "sucked" and other hyperbolic statements or opinions to that effect.  No one would or could take such statements seriously as they are attributed to Thakore's three-legged dog

Aspen. The same is true of the post-it note which it is unclear who posted but also which merely states the hyberbole opinion, "Only losers get take-n-bake pizza." (TACC ¶17).  This again is an opinion, rhetoric or hyperbole.  It is not actionable. Again, APM and Melone are not referred to in the note. (TACC ¶17).

    As far as the alleged Instagram posts, both are ads and merely ask for others to express their opinions about APM (that it "sucks") or about the type of pizza APM sells "sucks." TACC ¶21).  These are ads, hyberbole, rhetoric and opinions. Even if customers called to say that APM sucks or they would never eat at APM again, these again are expressions of opinions which customers and the public are entitled to express.  The alleged online reviews in the TACC (TACC ¶11) do not amount to anything more than opinions or hyperbole as they consist of "one star" ratings (as ratings would necessarily be opinions) or saying that APM "smells like fish. (TACC ¶11, 42, 58; Exhibit A to TACC). These are not actionable statements and are opinions or hyperbole at best. Because trade libel requires a false statement of fact, "opinions will not support a cause of action for trade libel." (*Computer XPress*, 93 Cal. App. 4th at 1010; *see also Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 104 (2004) (*disapproved of on other grounds, Baral v. Schnitt*, 1 Cal. 5th 376 (2016)). This is because First Amendment protections apply to statements of opinion. "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context. However, where a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the plaintiff to plead the facts showing its defamatory meaning." (*ComputerXPress*, 93 Cal. App. 4th 1011; *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385-86 (2004) (court is to determine whether a statement is one of opinion or fact by looking at the totality of the circumstances, including the context).

    "[R]hetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and language used in a loose, figurative sense have all been accorded constitutional protection" under the First Amendment and do not give rise to tort liability. (*Seelig v. Infinity Broadcasting Corp.*,97 Cal. App. 4th 798, 809 (2002) (internal citations and quotations omitted)). Determination of whether a statement is fact or opinion is generally a question of law for the court "and therefore suitable for resolution by demurrer or a motion to dismiss. (*Ferlauto v. Hamsher*, 74 Cal. App.

4th 1394, 1401 (1999).  In order state a claim for trade libel, the factual statements at issue must be about the quality of a product or service, ***not general statements about standing or reputation***. (*See Barns-Hind, Inc. v. Sup. Ct.*, 181 Cal. App. 3d 377, 381 (1986)(trade libel "is said to connote an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff"); *Shores v. Chip Steak Co.*, 130 Cal. App. 2d 627, 630 (1955) ("The distinction between libel and trade libel is that the former concerns the person or reputation of plaintiff and the latter relate to his goods"); *Aetna Casualty & Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (*citing Guess, Inc. v. Sup. Ct.,* 176 Cal. App. 3d 473, 479 (1986)) (trade libel "is not directed at the plaintiffs' personal reputation but rather at the goods a plaintiff sells or the character of his or her business").

Nothing in the internet postings which would satisfy the requirements for trade libel as discussed herein. The Court in *Global Telemedia International, Inc. v. Doe,* 132 F.Supp.2d 1261, 1264 (C.D.Cal.2001), granted a motion to strike a trade libel claim under closely analogous circumstances. The defendants posted allegedly libelous statements about the plaintiff, a publicly traded company, on the Raging Bull message boards. The Court concluded the company had not shown a probability of prevailing, because "the general tenor, the setting and the format" of the postings strongly suggested they were opinion. The postings "were part of an on-going, free-wheeling and highly animated exchange" about the company and were "full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents, such as corporate press releases or SEC filings." So, they lacked "the formality and polish typically found in documents in which a reader would expect to find facts." (132 F.Supp.2d at p. 1267.)

To the extent Defendants are alleged to have made any specific statements, they are quintessential opinions, rhetoric or hyperbole. There are no false facts attributed to Defendants at all. Indeed, disgruntled statements about a company or its personnel have repeatedly been held to be inactionable protected opinions or too vague to be taken as fact by any reasonable reader. (*See, e.g. Computer XPress*, 93 Cal. App. 4th at 1013 (internet postings disparaging the company as being fraudulent and made up of liars were "statements of opinion and not fact" or otherwise "too vague" to be actionable)); *Bank v. Rogers*, 206 Cal. App. 4th 669, 700 (2012); *(Seeling v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 810-811 (2002) (defendants' statements on radio show that plaintiff was a "local loser,"

"chicken butt" and "skank" were vague and inactionable statements of opinion and hyperbole)).

### 4.    The Alleged Statements Are Not Actionable

To state a claim for trade libel, the factual statements at issue must be about the quality of a product or service of a particular business, not general statements about standing or reputation. *(See, Barns-Hind, Inc. v. Sup. Ct.*, 181 Cal. App. 3d 377, 381 (1986) (trade libel "is said to connote an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff")). The Supreme Court of California has recognized that construing the elements of trade libel too broadly could lead to vexatious lawsuits over perceived slights between competitors." (*Hartford Cas. Ins. Co. v. Swift Distrib.*, Inc., 59 Cal. 4th 277, 294 (2014). A trade libel claim is subject to two "specificity requirements" which "must be satisfied by express mention or by clear implication": the statement at issue "(1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business." (*Hartford Cas. Ins.*, 59 Cal. 4th at 291).

Here, Defendants do not allege Plaintiffs made any statements about the quality of APM's products or its services except that the pizza was "burned" (which could mean freezer burned).  As noted above, the alleged libelous statements for the most part do not even refer to APM or Melone but rather only generally state that the type of pizza APM sells sucks or the food Carino's sells is better than take-n-bake pizza. Generalized statements about a company being terrible are not the kind of commentary about goods or services that are necessary for stating a trade libel claim. (*See Computer XPress*, 93 Cal. App. 4th at 1005-1011 (defendant's 131 pages of Internet postings about how bad plaintiff company was did not "satisfy the requirements for trade libel").  The motion should be granted.

### B.    Defamation Claim Fails

#### 1.    The Statute of Limitations Has Run On This New Claim

It is worth noting that Defendants have only for the first time in the TACC made a claim for defamation. (ECF No. 14; 34, 36).  However, the statute of limitations has run as to this claim as all the alleged defamatory statements were made in 2020 or 2021, ***almost three or four years ago***. (TACC¶¶11, 23, 17-20,26-27). A defamation claim must be filed within one year of accrual of the cause of action. (Cal. Civ. Proc.Code § 340 (c); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1246-1247(2003), as modified, (Dec. 22, 2003).  Defendants did not timely assert this

claim given that the alleged acts they claim this claim is based on occurred well over a year ago in 2020 or 2021—a fact they did not tell the Court when seeking leave. This claim is based on ***new allegations*** which were not in either of the two previously filed complaint and, thereby, the relation back doctrine would not and cannot apply as it would be prejudicial to allow an entirely new claim based on new allegations to circumvent the 1 year statute of limitations. Plaintiffs have been denied the chance to conduct discovery on and will want to conduct discovery on if the claim is allowed to stand—from the Court.  The claim must be dismissed.

### 2.    The Defamation Claim Fails

To state a defamation claim under California law, a counterclaimant must show "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." (*See Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) (citing Cal. Civ. Code §§ 45, 46). The statement must be "defamatory" to be actionable. Defamation is divided into two categories: libel and slander. (See Cal. Civ. Code §§ 44, 45, 46). Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot " 'reasonably [be] interpreted as stating actual facts' about an individual." (*See Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41(1988) (Hyperbolic and stairical statements accusing Jerry Falwell of having sex with animals was not actionable as libel)). Thus, "rhetorical hyperbole," "vigorous epithet [s]," "lusty and imaginative expression[s] of [] contempt," and language used "in a loose, figurative sense" have all been accorded constitutional protection. *(Greenbelt Pub. Assn. v. Bresler* 398 U.S. 6, 14, 90 S.Ct. 1537(1970); *Letter Carriers v. Austin*, 418 U.S. 264, 284, 286, 94 S.Ct. 2770(1974). "The critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court [citations] and therefore suitable for resolution by [dismissal]. [Citation.]" (*Good Government Group of Seal Beach, Inc. v. Superior Court*, 22 Cal.3d 672, 680(1978). Under the common law defense of "fair comment," parties have a right to an honest expression of opinion on matters of public interest. (*Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1283(1999).

In the context of defamation, Defendants have the burden to plead who, what, when, and where, so as to allow Plaintiffs to defend themselves. (*Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal.2d 224, 233 (1961) *superseded on other*

*grounds in Los Angeles Police Protective League v. City of Los Angeles*, 27 Cal.App.4th 168(1994). The date an alleged defamatory statement was published, the identity of the speaker, and to whom the statement was published must all be pled with specificity. (*See Kahn v. Bowers* 232 Cal. App. 3d 1599, 1612, n. 5(1991); *Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal. 2d 224, 235(1961); *Ellenberger v. Espinosa*, 30 Cal. App. 4th 943, 951(1994); *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1017(2005); *Okun v. Superior Court*, 29 Cal.3d 442, 458(1981). In a defamation action, "the essence is fairness in pleading in order to give the defendant sufficient notice of the cause of action stated against him so that he will be able to prepare his case." (*Bradley v. Hartford Acc. & Indem. Co*., 30 Cal. App. 3d 818, 825(1973), *overruled on other grounds in Silberg v. Anderson*, 50 Cal. 3d 205(1990). ***Without sufficient allegations of exactly what each speaker said, who the speakers were, and the dates and times of those speeches, a defamation claim fails as a matter of law.*** (*Bari v. Held*, U.S. Dist. LEXIS 13634, 37(1992); *see also* Cal. Civ. Proc. Code§ 430.10 subd. (f); *Williams v. Beechnut Nutrition Corp.* 185 Cal.App.3d 135, 139, fn.2. (1986).

California Civil Code section 47(c), codifies the "common interest privilege," which immunizes from liability non-malicious statements made to others on a topic of common interest. (*Lundquist v. Reusser*, 7 Cal.4th 1193, 1194(1994)). Civil Code section 47 provides in relevant part that "A privileged publication or broadcast is one made... (c) "In a communication, without malice, to a person interested therein, (1) by one who is also interested... Where the issue of common interest is clear, the question whether allegedly defamatory statements fall within the common-interest privilege is one of law for the court. (*Gantry Constr. Co. v. American Pipe & Constr. Co.,* 49 Cal.App.3d 186, 196-197(1975).

Here, Melone and APM are public figures that are subject to criticism by the public. (Exhibits 11-12). Plaintiffs and other third parties have the right to fair comment about Defendants. Melone has appeared in the press touting himself and APM. (Exhibit 11). Consumer information and public criticism are a matter of public interest which are afforded First Amendment protection by law and qualify for the common interest privilege. With that in mind, the defamation claim fails for the same reasons the trade libel claim fails.

It should be noted that Defendants allege that Thakore or other third parties made most these alleged statements yet the cause of action is against both Plaintiffs.

None of the statements appear to be from Thakore or DMM and most of the statements do not appear to have any link to DMM or Thakore. (Exhibit 1). Defendants are attempting to impermissibly impute liability for the alleged statements by other unnamed third parties to Plaintiffs. (*See Khawar v. Globe Int'l, Inc.*19 Cal.4th 254,273-74(1998) (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346-47(1974)(The First Amendment to the U.S. Constitution allows the individual states to define the appropriate standard of liability for defamation, but does not permit them to impose liability without fault)). Defendants fail to state the who, what, and when of the alleged statements at issue. The "who" part is particularly important because the Defendants do not identify who each speaker/poster is or how they have any alleged connection to Plaintiffs. It is only on information and belief have Defendants have asserted that Plaintiffs are somehow connected to each and every one the alleged statements. This is insufficient under the law.

An essential element of defamation is the publication of a false statement of fact. (*Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 600(1976). Accordingly, to state a cause of action for defamation, the complaint must allege a false statement of fact. (*Id.*). "***If defendant's statement is one of opinion, then it cannot be false and is outside the meaning of libel***." (emphasis added). (*Tschirky v. Superior Court*, 124 Cal.App.3d 534, 539 (1981). The Court must determine "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." (*McGarry v. University of San Diego*, 154 Cal.App.4th 97, 113 (2007). As the United States Supreme Court emphasized long ago: "Under the First Amendment, there is no such thing as a false idea." (*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339 (1974). "However pernicious an opinion may seem," the Court continued, "we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." (*Id.*).

In *Summit Bank v. Rogers*, 206 Cal.App.4th669 (2012) the Court stated: "Not only commentators, but courts as well have recognized that online blogs and message boards are places where readers expect to see strongly worded opinions rather than objective facts." (*See also, Krinsky v. Doe 6*, 159 Cal.App.4th 1154, 1162 (2008) ("[t]he use of a pseudonymous screen name offers a safe outlet for the user to experiment with novel ideas, express unorthodox political views, or criticize corporate or individual behavior without fear of intimidation or reprisal"); *Global Telemedia Internat., Inc. v. John Doe 1*, 132 F.Supp.2d 1261, 1267 (C.D.Cal. 2001)

(Globa Telemedia) (finding Internet postings "are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents")).

The Court in *Summit Bank v. Rogers* noted that the main components of Rogers's posts included claims that the bank did not pay dividends in 2009, that the "bitch CEO" who runs the Bank "thinks that the Bank is her "personel [sic] Bank to do with as she pleases", comments such as "worthless, lazy fat ass son" and the Bank is "screwed up," "piss poor," and a "problem Bank" and the customers "were left high and dry" among other accusations. The Court concluded, "Despite the Bank's invitation to do so, the law does not require Rogers to justify the literal truth of every word of the allegedly defamatory content, nor must we parse each word written by Rogers to determine its truthfulness. It is sufficient if the defendant proves true the substance of the charge, irrespective of slight inaccuracy in the details, 'so long as the imputation is substantially true so as to justify the "gist or sting" of the remark.' [Citations.]" As the Court noted in *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 899 (2004), "[c]ourts have recognized the importance of the public's access to consumer information," since "[m]embers of the public .... clearly have an interest in matters which affect their roles as consumers, and peaceful activities ... which inform them about such matters are protected by the First Amendment."

Comments that are no more than "'rhetorical hyperbole,' 'vigorous epithet [s],' 'lusty and imaginative expressions] of ... contempt,' and language used 'in a loose, figurative sense' have all been accorded constitutional protection. [Citations.]" (*Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1401 (1999). Consequently, courts have frequently found non-actionable the type of name calling, exaggeration, and ridicule that is much more extreme than the alleged statements at issue in this case. (*See, e.g., Krinsky*, 159 Cal.App.4th at pp. 1159 (in a chat room setting, anonymous post that corporate officers consisted of a "cockroach," "losers," "boobs," and "crooks" fell into the grouping of "crude satirical hyperbole which, while reflecting the immaturity of the speaker, constitute[s] protected opinion"); *Morningstar, Inc. v. Superior Court*, 23 Cal.App.4th 676, 690-691 (1994) (title "Lies, Damn Lies, and Fund Advertisements" nonlibelous as "simply 'imaginative expression' or 'rhetorical hyperbole,' traditionally protected under the First Amendment"); *James v. San Jose Mercury News, Inc.*, (1993) 17 Cal.App.4th 1, 12 (1993) (article describing lawyer as engaging in "sleazy, illegal, and unethical

practice" fell into "protected zone of "'imaginative expression'" or "'rhetorical hyperbole'"'").

Blog postings are forums well-known for the use of colorful language and the expression of opinion. In context, any reasonable reader would know that the posters were expressing opinions, rhetoric, and/or hyperbole. In analyzing challenged statements and the context in which they appear, the United States and California Supreme Courts established in a long line of precedent that loose, figurative and hyperbolic language and rhetoric are examples of non-actionable opinion even where the challenged statements on their face appear factual. *(See, e.g., Greenbelt Cooperative Publ'g Assn., Inc. v. Bres*ler 398 U.S. 6, 13-14 (1970) (holding that use of the word "blackmail" to describe plaintiffs conduct was non-actionable since "the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiffs] negotiating position extremely unreasonable"); *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) ("even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole') (*quoting Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 601(1976).

The rationale behind this longstanding, constitutional rule of law is that it "provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." (*Rosenaur v. Scherer*, 88 Cal.App.4th 260, 279 (2001) (*quoting Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20(1990)). Countless California courts have applied this constitutional protection in dismissing libel actions based on " 'rhetorical hyperbole,' 'vigorous epithets,' 'lusty and imaginative expression[s] of... contempt,' and language used 'in a loose, figurative sense.' " (*Seelig*, 97 Cal.App.4th at 809; *see, e.g., Ruiz v. Harbor View Cmty Ass'n*, 134 Cal.App.4th 1456, 1473 (2005); *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 387 (2004) (statements that plaintiff "stole" copyrighted material, "compromised" defendant, and "plagiarized" data appear in context as non-actionable rhetorical hyperbole and opinion); *Rosenaur*, 88 Cal.App.4th at 278-279 (calling plaintiff "thief" and "liar" in context was non-actionable hyperbole); *Nicosia*, 72 F. Supp. 2d at 1104 (granting motion to dismiss defamation action

because defendant's assertions on her website that plaintiff was a "fraud," "criminal," and had acted illegally were non-actionable hyperbole); *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1161 (C.D. Cal. 1998) (granting motion to dismiss defamation claims where challenged statements made by manufacturer's representative were hyperbole protected by the First Amendment and not subject to liability; "The statements that referred to MCA as a 'bank robber' that committed a 'crime,' 'heist,' or 'theft' cannot be seen as anything but hyperbole made in the middle of an attempt to convince the public of Mattel's side in the ongoing litigation."); *Morningstar, Inc. v. Superior Court,* 23 Cal.App.4th 676, 690, 687-694 1994)).  None of the supposed statements are actionable or attributable to Plaintiffs.

### C.    The Unfair Competition Claim Fails

Defendants have brought a claim under Business & Professions Code § 17200,  otherwise known as the Unfair Competition Law ("UCL"), against Plaintiffs. (TACC¶¶71-76).  However, Defendants have not alleged any facts establishing that they are aggrieved consumers or competitors of DMM entitled to invoke the protections of § 17200 against Plaintiffs. (TACC¶¶71-76).  APM cannot be an aggrieved consumer as a business entity. Defendants in no way can allege they are competitors of Thakore or of DMM. ***APM is a pizza business***, not a marketing business like DMM.(TACC¶¶3-4).   The allegation that Thakore has a stake in Carino's is simply false (and yet another Rule 11 violation).  Defendants have absolutely no evidence of this whatsoever and are relying on the testimony of a disgruntled ex-employee who could not provide any evidence or basis for this claim other than he was allegedly told this by someone else which is inadmissible hearsay.

The UCL was enacted to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 135). Therefore, it is recognized that a UCL claim fails if it lacks a connection to protection of fair competition or consumers.  (*Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.* (E.D. Cal. 2013) 965 F.Supp.2d 1141, 1154 (UCL claim dismissed where it arises out of the business relationship between plaintiff and defendant and does not involve the public in general or individual consumers who are harmed by defendant's practices); *Dillon v. NBC Universal Media, LLC* (C.D. Cal. June 18, 2013) 2013 W.L. 3581938 at 7 (dismissal of UCL action is appropriate when plaintiff is neither a competitor nor a consumer)).

"Unfair competition, as a cause of action, serves to protect business competitors or consumers from being injured as a result of unlawful, unfair, or fraudulent business acts or practices and is not intended to allow a business to recover damages from its own employees or partners for wrongful or fraudulent acts performed by its employees or partners.  There are other avenues of relief available for such misconduct." (*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.* (N.D. Cal. March 8, 2010) 2010 W.L. 890048 at p. 5).

In the instant case, Defendants have not brought the UCL action as members of the consuming public nor as competitors entitled to sue under the UCL. (TACC¶¶71-76).  While some alleged acts of vandalism are mentioned, there are no facts in the TACC stated to support any claim that Plaintiffs had anything to do with such acts other than Defendants' half-baked suspicions. ***Plaintiffs (or any third party for that matter) have never been charged with any crimes related to this and Melone admitted in deposition that he told the police had no idea who actually vandalized APM.*** (Exhibit 2). The claim has no basis and contradicts the sworn testimony of Melone as well as what he told police. (Exhibits 2-7).

### D.    The Declaratory Relief Claim Fails

The Court's decision to exercise jurisdiction over a declaratory-judgment action is discretionary; the Court may refuse to consider a declaratory-judgment action even if all the requirements are met. (*Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 n.17 (1993); *Admiral Ins. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir.2023); see 28 U.S.C.A. § 2201(a). A party bringing a declaratory judgment claim is required to show that under ***"all the circumstances*," there is an actual or <u>imminent injury</u> that was caused by the opposing party, <u>is redressable by judicial action</u>, and is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."** (emphasis added). (*See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,482 F.3d 1330, 1338). ***<u>A declaratory judgment that merely seeks to affect uncertain future conduct of third parties, who are not named in the complaint, would involve the very sort of speculative, hypothetical factual scenario that would render such a judgment a prohibited advisory opinion.</u>*** (emphasis added) (*Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011). In declaratory judgment actions, a substantial degree of specificity is required in the counterclaim, including specific allegations that the Counterclaimant is facing the threat of

immediate harm. (*United Mine Workers of America Intern. Union v. G.M. & W. Coal Co.*, 642 F. Supp. 57 (W.D. Pa. 1985).

Here, this claim is not pled with the specificity required by law. It also should be noted that the alleged conduct per the TACC all took place in 2021—three years ago. There is no specificity as to any alleged future harm in the TACC and no alleged acts by Plaintiffs are asserted to occur after a year or more ago.Defendants are thereby not in any danger of any alleged immediate imminent harm. Further, the claim is extremely vague and, moreover, ***seeks relief as to unknown, speculative future conduct of third parties who are not named in the complaint and would involve the very sort of speculative, hypothetical factual scenario that would render such a judgment a prohibited advisory opinion.***

"Declaratory relief is not an independent cause of action, but instead a form of equitable relief." (*Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1219 (S.D. Cal. 2012); *see also Martin v. Bank of America*, No. 2:15-cv-0372-GMN-PAL, 2016 WL 70456, at *3 (D. Nev. Jan. 6, 2016). Even where declaratory relief could constitute its own cause of action, "a federal court may decline to address a claim for declaratory relief where the substantive claims would resolve the issues raised by the declaratory action." (*Yang Chanthavong v. Aurora Loan Services, Inc.*, 448 B.R. 789, 803 (E.D. Cal. 2011); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Further, **"[a] declaratory relief claim operates 'prospectively,' not to redress past wrongs."** (*Flores v. EMC Mortg. Co.*, 997 F.Supp.2d 1088, 1111 (E.D. Cal. 2014). (emphasis added). (**"As an equitable remedy, declaratory relief is dependent upon a substantive basis for liability and has no separate viability if all other causes of action are barred."**(emphasis added). (*Id.*). Federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." (*Spencer v. Kemna*, 523 U.S. 1, 18, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). Thus, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." (*Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (*citing Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977)). Put another way, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." (*See Bayer v.*

*Neiman Marcus Grp., Inc.,* 861 F.3d 853, 868 (9th Cir. 2017);*Trinh v. Homan*, 466 F.Supp.3d 1077, 1094 (2020).

Here, if the other causes of action are dismissed, so must this claim. The declaratory relief claim is subsumed by Defendants' other claims and duplicative thereof.  Moreover, the Court cannot make a determination via declaratory relief as to whether or not Plaintiffs should cease all alleged ***past*** harassing and unlawful conduct as these are past alleged wrongs and there has been no finding that Plaintiffs even committed such acts.  Whether or not there was any alleged harassing or unlawful conduct (which is disputed) is a question for the jury. The Court would have to issue an advisory opinion in order to decide the relief sought in this claim is proper.  That is improper under the law. (*See Mendia v. Garcia*, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016); *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997).

Further,  how can the Court order Plaintiffs and other unknown or unnamed third parties to stop future, hypothetical conduct to include to stop any further disparagement (free speech) of any kind of Defendants?  This would be unfair to unnamed third parties who have had no chance to defend themselves in this case. The Court cannot issue should a broad, blanket order restricting future, hypothetical conduct and/or the free speech rights of Plaintiffs or other unknown third parties. Prior restraints on expression are presumptively unconstitutional. *(Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419–20, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *(Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*,413 U.S. 376, 390, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). The claim should be dismissed.

## IV.    CONCLUSION

The motion should be granted without leave to amend.

DATED:  January 31, 2024                      /s/Pamela C. Chalk
                                              Pamela C. Chalk, Esq.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per CivLR 5.1(h). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery upon their appearance in this matter.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 31st day of January, 2024 at San Diego, California.

DATED:  January 31, 2024

By:  _____/s/ Pamela C. Chalk_____
PAMELA C. CHALK
Attorneys for Plaintiffs and
Counter-Defendants