**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

GOPHER MEDIA LLC et al.,
Plaintiffs,
v.
ANDREW MELONE et al.,
Defendants.

Case No.: 3:21-cv-1909-RBM-VET

**ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR COUNTERCLAIM**

**[Doc. 167]**

Before the Court is Andrew Melone and AGFM Family Enterprises, LLC, doing business as American Pizza Manufacturing ("APM")'s (collectively, the "Defendants" or "Counterclaimants") Motion for Leave to Amend Their Counterclaim ("Motion to Amend"). (Doc. 167.) Defendants seek leave to amend their Counterclaim to add a legal claim for trespass to chattels, based on the same factual allegations Defendants have already pled. (*Id.* at 2.)[1] Gopher Media LLC, doing business as Doctor Multimedia ("DMM"), and Ajay Thakore (collectively, the "Plaintiffs" or "Counter-Defendants") filed an Opposition to the Motion. (Doc. 195.) Defendants filed a Reply to the Opposition. (Doc. 211.) The Court finds this matter suitable for determination on the papers without

[1] The Court cites the CM/ECF pagination unless otherwise noted.

oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Defendants' Motion to Amend (Doc. 167) is **DENIED**.

## I. BACKGROUND

On January 3, 2022, Defendants filed their Counterclaims. (Doc. 14). On May 17, 2022, Magistrate Judge Gallo issued a scheduling order that set June 10, 2022, as the deadline to file motions to amend the pleadings (Doc. 32 at 1) and October 31, 2022, as the deadline for fact discovery. (*Id.*) On June 7, 2022, Defendants filed their Second Amended Counterclaim ("SACC"). (Doc. 36.) In the SACC, Defendants claimed that Plaintiff Thakore directed or coordinated a series of vandalism incidents at APM, including slashing a sign, smashing a window, and spray-painting graffiti on APM's wall. (*Id.* at 10–12.) Plaintiffs filed a Motion for Judgment on the Pleadings ("MJOP") as to Defendants' Counterclaims (Doc. 56), which the Court granted. (Doc. 71.) In their May 22, 2023, Response to the MJOP (Doc. 60), Defendants requested—and were granted—leave to amend their SACC to add a claim for defamation based on the same allegations supporting their trade libel claim. (Doc. 71 at 33.) Analyzing the request under the *Foman* factors, the Court found Plaintiffs would suffer no prejudice, so granted it despite finding undue delay. (*Id.* at 34.)

Defendants filed the operative pleading in this case, the Third Amended Counterclaim ("TACC"), on January 12, 2024. (Doc. 72.) In the TACC, Defendants asserted four counterclaims: (1) trade libel; (2) defamation; (3) violation of California's Unfair Competition Law ("UCL"); and (4) declaratory relief. (*Id.* at 1.) Defendants relied on the alleged vandalism as evidence in support of their UCL claim, for which they seek economic damages for lost profits, reputational repair costs, and property damage. (*Id.* at 20.) On May 24, 2024, Plaintiffs filed a Memorandum of Facts and Contentions of Law (Doc. 127), in which they opposed the economic damages for vandalism under the UCL which Defendants sought in their TACC. (*Id.* at 39.) Defendants' counterclaims were stayed pending appeal on June 6, 2024. (Doc. 144.)

On July 7, 2026, the Ninth Circuit issued its decision dismissing Plaintiffs'

interlocutory appeal. (Doc. 151.) On August 17, 2026, the Parties discussed the issue of damages under the UCL again in their meet and confer, with Plaintiffs stating they believed there was no basis for recovery. (Doc. 196-2 at 7.) Four days later, on August 21, 2026, Defendants filed the present Motion to "ensure [they] can request monetary recovery of the property damages they alleged were caused by Plaintiffs' conduct." (Doc. 167 at 3.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 15 governs amended and supplemental pleadings. Once the time for amendment as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court "should freely give leave [to amend] when justice so requires." *Id.* District courts have substantial discretion in determining when an amendment should be allowed. *See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997). Courts consider several factors, commonly referred to as the "*Foman* factors," in ruling on a motion for leave to amend: "undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Generally, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). After the court's scheduling order amendment deadline has passed, there is an additional threshold requirement of good cause under Rule 16 before the Court reaches the *Foman* factors. Under Rule 16, "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

## III. DISCUSSION

### A. Good Cause Under Federal Rule of Civil Procedure 16(b)

The Court's Scheduling Order set June 10, 2022, as the deadline to file motions to amend the pleadings. (Doc. 32 at 1.) Defendants now ask the Court to grant their Motion to Amend filed on August 21, 2026, more than four years after that deadline. (Doc. 167 at 5.) Granting the Motion therefore requires modification of the Scheduling Order. The

Court first considers whether Defendants have shown good cause for that modification under Rule 16(b)(4). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (holding that, under Rule 16, a court will only modify a scheduling order upon a showing of good cause by the moving party.) "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. A scheduling deadline may be modified if it "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* "If that party was not diligent, the inquiry should end." *Id.*

In assessing diligence, courts within the Ninth Circuit consider: (1) the moving party's diligence in assisting the court in creating a workable scheduling order; (2) whether the party's noncompliance with a scheduling deadline occurred because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) whether the party was diligent in seeking amendment of the scheduling order once it became apparent the party could not comply. *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 328 (D. Ariz. 2018) (citing *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012)).

The first factor is neutral. There is no indication Defendants were not diligent in assisting the Court in creating a workable Rule 16 order. The second factor weighs against Defendants, as they have not explained why their failure to seek leave to amend earlier resulted from a matter not reasonably foreseen or anticipated. Defendants ask the Court to grant them leave to amend to add an additional legal claim. (Doc. 167 at 2.) Defendants' reason is that, in the August 17, 2026, meet and confer, Plaintiffs advanced a new legal argument of which Defendants were not previously aware (*Id.* at 2–3): "we believe that there is no basis for recovering anything monetary related to vandalism under the UCL." (Doc. 196-2 at 7.) However, Plaintiffs first raised the argument that restitution damages were inapplicable in their May 24, 2024, Memorandum of Facts and Contentions of Law, stating that "Defendants fail to allege losses that could serve as the basis for restitution under the UCL." (Doc. 127 at 39.)

Defendants do not identify any newly discovered facts or intervening change in law underlying their claim that Plaintiffs advanced a novel argument; it simply made them aware of a potential deficiency in their pleadings. *See Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) (denying Plaintiff's untimely amendment brought after learning of a pleading deficiency prompted by Defendants' MSJ). Defendants' asserted reason for seeking amendment arises from the distinction between compensatory damages and restitution under the UCL—a distinction which was established well before Defendants' present Motion. Because Defendants have not explained why the proposed claim could not reasonably have been pleaded earlier, Defendants cannot show that their noncompliance with the scheduling deadline resulted from a matter not reasonably foreseen or anticipated.

The third factor also weighs against Defendants. Defendants brought this Motion four days after Plaintiffs raised their remedies objection in the meet and confer. Defendants, though, have not shown that the need for requesting leave only became apparent at that time. The facts relevant to a trespass to chattels claim have been known to Defendants for more than four years. The argument Plaintiffs raised at the meet and confer regarded the "scope of UCL restitution" (Doc 196-2 at 7) and, just as their 2024 argument, challenged the availability of monetary recovery under the UCL. The Court does not fault Defendants for failing to seek amendment while this action was stayed pending appeal. But Defendants have not adequately explained why the proposed claim could not reasonably have been brought earlier, given their longstanding knowledge of the alleged vandalism. Their promptness following the meet and confer does not rectify this failure and does not establish diligence. *See Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1278 (9th Cir. 2023) (finding the party seeking amendment lacked good cause to incorporate a new legal theory where the relevant facts were known to the movant for five months).

Moreover, Defendants themselves indicate that the claim they seek to add is based on the same facts already known to both Parties. (Doc. 167 at 2.) Defendants were aware of all facts giving rise to a potential trespass to chattels claim and could have raised it

earlier. Because of Defendants' knowledge of the underlying facts, their delay of more than four years after the Court's deadline to amend, and their failure to establish that their untimeliness resulted from a matter not reasonably foreseen or anticipated, Defendants have not demonstrated diligence and therefore have failed to establish good cause to modify the Scheduling Order under Rule 16(b)(4). This independently warrants denial of the Motion to Amend.

**B. Excusable Neglect Under Federal Rule of Civil Procedure 6(b)**

Rule 6(b)(1)(B) permits a court to extend deadlines after they pass for good cause if the party failed to act because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993). "Whether neglect is excusable depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Branch Banking & Trust Co. v. D.M.S.I., LLC*, 871 F.3d 751, 765 (9th Cir. 2017). The moving party bears the burden of showing excusable neglect. *Henderson v. Aria Resort & Casino Holdings, LLC*, Case No. 2:22-cv-00280-JAD-NJK, 2023 WL 3007914, at *2 (D. Nev. Mar. 31, 2023). Even assuming Rule 6(b)(1)(B) applies to Defendants' request, Defendants have not established excusable neglect.

The first factor, prejudice to Plaintiffs, is mixed. Adding a trespass to chattels claim long after the close of discovery would introduce a new basis for recovery—compensatory damages—not addressed in previous pleadings. Defendants argue that "Plaintiffs will suffer no prejudice in defending claims they have known about since 2022." (Doc. 167 at 3.) It is true that Plaintiffs have known about the allegations of vandalism since 2022, when Defendants filed the SACC. (*See* Doc. 36 at 10.) However, the SACC only included a general demand for "all available legal remedies" and punitive damages. (*Id.* at 15.) This could not have put Plaintiffs on notice that Defendants would seek compensatory damages

for vandalism, particularly considering that it is not an available remedy under the UCL.

Defendants more specifically pointed to vandalism damages in the TACC when they mentioned economic injury in the form of "lost profits, costs to repair Counterclaimants['] reputation, and property damage" (Doc. 72 at 20) estimated at $48,825 (*Id.* at 11) and sought "all available legal remedies…including…restitution." (*Id.* at 20.) Plaintiffs had notice that Defendants sought monetary recovery for alleged vandalism before the present Motion, even if the Parties dispute which remedy was available under the UCL. But Defendants have not established that Plaintiffs received an adequate opportunity to investigate that amount, and Plaintiffs first learned of this only after the close of discovery. Additional discovery might reasonably be required to fully investigate this new category of damages. There is a danger of prejudice to Plaintiffs if Defendants are allowed to amend their pleadings to add an additional claim. But Plaintiffs had knowledge since 2022 of the underlying incidents, and since 2024 of Defendants' intent to seek vandalism damages. Therefore, the first excusable neglect factor does not clearly point in either direction.

The second and third factors, the length of delay and reason for delay, weigh against a finding of excusable neglect. Defendants knew of all the facts underlying a potential trespass to chattels claim since 2022. They knew of Plaintiffs' intention to oppose restitution damages before filing the present Motion. There is no reason that Defendants could not have pled a trespass to chattels claim at any earlier time in the proceedings, rather than attempting to add it at the proverbial eleventh hour. The fourth excusable neglect factor, whether the movant acted in good faith, is neutral. Defendants' explanation for the delay does not reflect bad faith. Because the factors, taken together, weigh against Defendants, the Court finds that Defendants have not established excusable neglect.[2]

**C. Applicability of Federal Rule of Civil Procedure 15(b)**

Defendants argue that amending the pleadings is authorized by Rule 15(b)(1) or,

---

[2] As good cause and excusable neglect are threshold inquiries, the Court does not analyze Defendants' Motion under the *Foman* factors.

alternatively, by Rule 15(b)(2). (Doc. 167 at 3–4.) Plaintiffs contend that neither Rule 15 basis applies. (Doc. 195 at 17.) The Court agrees with Plaintiffs. Rule 15(b)(1) addresses amendments when "at trial, a party objects that evidence is not within the issues raised in the pleadings." Trial has not begun, and Defendants identify no objection at trial that would bring their amendment within the ambit of this Rule. Fed. R. Civ. P. 15(b)(1).

Rule 15(b)(2) permits amendments based on issues "tried by the parties' express or implied consent." Defendants do not establish that Plaintiffs expressly or impliedly consented, only that they were aware of the underlying claims and did not object to them. "While it is true that a party's failure to object to evidence regarding an unpleaded issue may be evidence of implied consent to a trial of the issue, it must appear that the party understood the evidence was introduced to prove the unpleaded issue." *Campbell v. Board of Trustees of Leland Stanford Junior University*, 817 F.2d 499, 506 (9th Cir. 1987). Defendants offered the vandalism allegations in support of the pleaded UCL claim. Plaintiffs' failure to object to those allegations does not establish that they understood Defendants would use them to present a separate trespass to chattels claim. Because Rule 15(b)(1) is not applicable, and there is no evidence of consent, Rule 15(b) does not enable the Court to grant Defendants leave to amend.[3]

## IV. CONCLUSION

Defendants' Motion to Amend (Doc. 167) is **DENIED**.

**IT IS SO ORDERED**.

DATE: November 10, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

[3] As the Court denies the Motion to Amend for the reasons set forth above, it need not reach Plaintiffs' arguments for denial based on violations of the meet-and-confer rules and Chambers Rules.